**In re Carl L. COLSTON and Judy V. Colston, Debtors.**

**Bankruptcy No. 80-00492R.**

United States Bankruptcy Court,
N. D. Georgia,
Rome Division.

May 14, 1981.

Clinton J. Morgan, Wright, Morgan & Jones, Rome, Ga., for Nat. City Bank of Rome.

George Hamilton, Hamilton & Minge, Rome, Ga., for Colstons.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

The objection of National City Bank of Rome to the confirmation of the debtors' Chapter 13 plan brings the matters involved herein before the Court. These objections were heard by the Court at the confirmation hearing held November 5, 1980 in Rome, Georgia. Having considered the objections, the arguments of the parties and the pleadings on file, the Court makes the following decision.

## FINDINGS OF FACT

Carl L. Colston and Judy V. Colston filed a joint petition under Chapter 13 of Title 11 of the United States Code on September 30, 1980. Their proposed plan provides for weekly payments of $44.50 to the trustee from which 100% of all secured and unsecured debts will be paid over a period of four years.

On October 28, 1980 National City Bank of Rome, ("NCB"), filed an "Objection to Confirmation". Several objections to confirmation have been asserted by NCB each of which will be addressed separately below.

## APPLICABLE LAW

In determining whether to confirm a Chapter 13 plan the Court is governed by 11 U.S.C. § 1325(a) which provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation; has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed

under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; (5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and (6) the debtor will be able to make all payments under the plan and to comply with the plan.

█ NCB contends that no plan was filed by the debtors as required by 11 U.S.C. § 1321 and Rule 13–201 of the Rules of Bankruptcy Procedure. With this contention the Court cannot agree. The debtors filed a printed form entitled "Chapter 13 Plan" with their petition. This plan discloses the duration of the plan and the amount to be paid to the trustee each week. The percentage of secured and unsecured claims to be paid under the plan is also specified. It cannot be seriously contended that this pleading is not a Chapter 13 plan. Accordingly, the Court finds that a plan has been filed by the debtors as required by Section 1321 of the Bankruptcy Code and Rule 13–201 of the Bankruptcy Rules.

█ NCB next asserts that the creditors were given a notice requiring them to accept or reject the plan without ever being advised as to the nature of the plan. The creditors in this case were sent the form notice entitled "order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stays". This notice discloses that a four year plan has been proposed which provides for weekly payments to the trustee of $44.50. The notice further sets forth the total amount of secured indebtedness, the total amount of unsecured indebtedness and the total overall indebtedness of the debtors. Although it might have been more helpful to the creditors if the order and notice had informed them of the debtors' proposal to pay all secured and unsecured claims in full, the failure to disseminate such information was not prejudicial. The order and notice for the first meeting of creditors advised the creditors that their claims were being dealt with in a Chapter 13 plan. Being so advised, the creditors were put on notice to come into the Court to protect their interests. As the rights of the creditors were not prejudiced by the failure of the notice for the first meeting to describe every major provision in the plan the Court concludes that NCB's argument is without merit. NCB next alleges that Rule 13–204(a)(1) of the Rules of Bankruptcy Procedure has not been complied with. This rule provides:

"(a) First Meeting.

(1) Date and Place. Promptly after the filing of a plan the court shall call a first meeting of creditors, but if there is an application or motion to dismiss or to convert to bankruptcy under Rule 13–112, or an appeal from or a motion to vacate an order entered under that rule, the court may delay fixing a date for such meeting. A copy or a summary of the last filed plan and a form of proof of claim containing provision for acceptance or rejection of the plan shall accompany the notice of the meeting. The notice shall state that any secured claim not filed before the conclusion of the first meeting of creditors or within such extended time as the court may fix will not be treated as a secured claim for purposes of voting and distribution and that any creditor filing a claim who has not filed a written acceptance or rejection of the plan pursuant to Rule 13–202 prior to the conclusion of the first meeting of creditors shall be deemed to have accepted the plan. The meeting may be held at a regular place for holding court or at any other place within the district more convenient for the parties in interest."

■ NCB has not stated in what respect Rule 13–204(a)(1) has not been complied with. Nevertheless, the Court has examined the notice sent to the creditors and has discovered some departures from the requirements of this rule. The summary of the plan contained in the notice merely informs the creditors that the debtors have proposed a four year plan under which weekly payments of $44.50 will be made to the trustee. No proof of claim containing a provision for the acceptance or rejection of the plan by the secured creditors accompanied the notice of the first meeting of creditors. The notice does not state that any secured claim not filed before the conclusion of the first meeting of creditors or within such extended time as the Court may fix will not be treated as a secured claim for purposes of voting or distribution.[1] There is no statement in the notice that any secured creditor filing a claim who has not either filed a written acceptance or rejection of the plan pursuant to Rule 13–202 prior to the conclusion of the first meeting of creditors shall be deemed to have accepted the plan. While there are some deviations from the provisions of Rule 13–204(a)(1), the Court finds that they are neither meaningful nor prejudicial. Although no proof of claim accompanied the notice sent to the creditors, the notice states, "In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim, whether or not he is included in the list of creditors filed by the debtor. Claims which are not filed within six months after the above date set for the meeting of creditors will not be allowed, except as otherwise provided by law". This statement gives notice to the creditors that a proof of claim must be filed if they want to receive dividends from the estate. The notice also states, "File claims and acceptance or rejection of plan in duplicate with the clerk of the bankruptcy court..." which advises secured creditors of the necessity of filing a written acceptance or rejection of the plan. Because the slight deviations from Rule 13–204(a) were not prejudicial, the Court concludes that NCB's objection is without merit.

NCB next maintains that the debtors' plan does not comply with the provisions of 11 U.S.C. § 1322.[2] Subsection (a) of Section 1322, which specifies the provisions which must be included in a plan reads:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the execution of the plan;

(2) provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

■ The plan filed by the debtors provides for the submission of a portion of the debtors' income to the supervision and control of the trustee and for the payment of claims entitled to priority under Section 507 as required by Section 1322(a)(1) and (2). There are two classes of creditors in the plan, secured creditors and unsecured creditors. Each claim within each of the two classes will receive the same treatment as the plan provides for payment in full of all secured and unsecured claims. After reviewing the plan the Court concludes that the debtors have complied with subsection (a) of Section 1322.

Subsection (b) of Section 1322 enumerates provisions which may be included in a Chapter 13 plan at the option of the debtor.

---

1. The Court notes that as Chapter 13 plans are no longer voted on by the creditors but are either accepted or rejected by the secured creditors, the wording of the statement required to be included in the notice of the first meeting should be amended to reflect this change in the law.

2. NCB has asserted a separate objection under 11 U.S.C. § 1322(c) which will be addressed below.

The debtors herein have availed themselves of only one of these options which is found in paragraph (2) of subsection (b). Under this paragraph a debtor may modify the rights of holders of secured claims other than a claim secured only by real property that is the debtor's principal residence. There are no other provisions in the debtors' plan which fall outside the realm of what is permissible under Section 1322(b). Therefore the Court concludes that the provisions of Section 1322(b) have been complied with.

It is next argued by NCB that the plan filed in this case is actually the trustee's plan and not the debtors'. For this reason NCB contends that the plan may not be confirmed. This assertion is not a basis for objection to confirmation under 11 U.S.C. § 1325(a). Furthermore there is nothing in the record to indicate that the plan filed in this case was prepared by any party other than the debtors with the assistance of their counsel.

NCB next contends that the Bankruptcy Code deprives secured creditors of due process of law for the reason that there is no provision for the payment of interest on secured claims. Section 1325(a)(5) provides three methods by which secured claims may be dealt with under a Chapter 13 plan. The applicable provision in the instant case is part (B) of Section 1325(a)(5). Under this section a plan must provide that the holder of a secured claim retain the lien securing the claim and the value, as of the effective date of the plan, of property to be distributed under the plan on account of the secured claim cannot be less than the allowed amount of such claim. It has been held that the compensation to which a secured creditor is entitled consists of the present value of the property to be distributed that takes into account the discount of money to be received in the future. *In Re: Ziegler*, 6 B.R. 3, 1 C.B.C.2d 874 (1980, Bkrtcy.S.D.Ohio); *In Re: Crockett*, 3 B.R. 365, 1 C.B.C.2d 926 (1980, Bkrtcy.N.D.Ill.); *In Re: Lum*, 1 B.R. 186, 1 C.B.C.2d 95 (1979, Bkrtcy.E.D.Tenn.). In each case it was held that interest payments must be made to secured creditors when secured claims are provided for under a Chapter 13 plan pursuant to 11 U.S.C. § 1325(a)(5)(B). This Court has followed the holding of those cases. *In Re: McLeod*, 2 C.B.C.2d 319 (1980, Bkrtcy. N.D.Ga.); *In Re: Weaver*, 2 C.B.C.2d 315 (1980, Bkrtcy.N.D.Ga.). Because this Court interprets 11 U.S.C. § 1325(a)(5)(B) to require interest payments to a secured creditor, it must be concluded that NCB's objection is without merit.

NCB next argues that it is entitled to receive the full and timely monthly payments called for by its contracts with debtor Carl L. Colston, to retain its security interest, and to be fully protected by insurance if NCB is to be forced into the proposed plan. To determine the merits of this argument the Court must again look to the provisions of 11 U.S.C. § 1325(a)(5)(B). The Court cannot dispute the assertion that NCB is entitled to retain its security interest. That is clearly provided for in § 1325(a)(5)(B)(i). Accordingly, the Court rules that NCB shall retain its lien in the collateral securing its claim. NCB is not entitled to receive the monthly payments called for by its contract unless the plan so provides. Under Section 1325(a)(5)(B)(ii) NCB is entitled to receive property having a value as of the effective date of the plan that is not less than the allowed amount of the claim. This requirement has been fulfilled as the plan proposes to pay NCB's claim in full. Although lack of insurance protection may provide grounds for relief under 11 U.S.C. § 362 it is not grounds to object to the confirmation of a plan under 11 U.S.C. § 1325(a). Having considered the argument of NCB the Court determines that this objection does not provide a basis for the denial of confirmation.

NCB next argues that its inclusion in the proposed plan of the debtors is a denial of due process of law in violation of the Fifth Amendment to the United States Constitution. It cannot be disputed that the provisions of the Bankruptcy Code enacted by Congress ultimately impair the obligation of contracts, but this impairment alone does not constitute a denial of due

process. The test of constitutionality in this instance is whether the provisions of the Bankruptcy Code are so grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Campbell v. Alleghany Corporation*, 75 F.2d 947 (4th Cir. 1935) cert. denied 296 U.S. 581, 56 S.Ct. 92, 80 L.Ed. 411 (1935); *Securities and Exchange Commission v. Albert & Maguire Securities Co., Inc.*, 378 F.Supp. 906 (E.D. Pa.1974). No attempt has been made by NCB to prove that any provision of Chapter 13 is so grossly arbitrary and unreasonable as to be incompatible with fundamental law. In this situation the Court must reject the constitutional objection of NCB.

It is next contended by NCB that no cause has been shown for the approval of a plan in excess of three years as required by 11 U.S.C. § 1322(c). At the hearing of November 5, 1980 the Court heard the testimony of debtor Carl Colston with regard to the need for a four year plan. As a textile spinner with Integrated Products Mr. Colston earns an hourly wage of $4.65. His work schedule is erratic, fluctuating from a three to a five day work week, and his income varies accordingly. Mr. Colston also does some construction work for his father at an hourly wage of $5.00. This job is irregular as he works only when his father has a construction project. Mrs. Colston was formerly employed as a winder at Integrated Products. Due to health problems, Mrs. Colston had to terminate her employment with that company. Although she is able to do light work, Mrs. Colston is not presently employed. The Colstons have two children to support. Mr. Colston testified that he did not feel that he could make any additional payments into the plan at this time.

▪ After considering Mr. Colston's testimony the Court concludes that a four year plan is acceptable. The debtors are to be commended for their desire to pay all of their debts in full. Mr. Colston's testimony and the bankruptcy schedules show that payments greater than those proposed by the plan would create an economic hardship for the Colstons. This Court is inclined to allow the debtors to extend their plan to four years in order to aid the debtors in their efforts to fully repay their creditors.

▪ NCB next argues that the debtors' plan should not be confirmed for the reason that other holders of secured claims are to be paid as fully secured creditors even though it has not been established that these creditors are fully secured. After hearing the evidence adduced at confirmation the Court determined that four of the secured creditors of the debtors were not fully secured. The following adjustments were made in the amount of the allowed secured claims. The debt of Western Auto is secured by merchandise purchased by Mr. Colston at Western Auto in approximately December of 1979. A minibike purchased for $229.99 and miscellaneous toys purchased for $136.48 comprise the security for the debt. The Court finds that Western Auto's claim is secured to the extent of one half of the purchase price of the collateral which is $183.24. As security for the debt owed to Commercial Credit Corporation the Colstons pledged a 1972 pickup truck and household goods consisting of furniture that was purchased in 1969. After considering the testimony of Mr. Colston, the Court determines that the claim of Commercial Credit Corp. is secured to the extent of $1,200.00. The debt owed to Finance America is secured by a microwave oven, a stereo and a cleaning outfit all of which were purchased in August, 1979 and financed by Finance America. Upon consideration of the testimony of Mr. Colston the Court determines that the claim of Finance America is secured to the extent of $1,000.00. These claims shall be dealt with under the debtors' plan in accordance with the foregoing adjustments.

▪ NCB next contends that the debtors' plan has not been proposed in good faith for the reason that the income of the debtors warrants payment into the plan greater than the amount proposed and thus higher payments to creditors. The Court is aware of the many cases which interpret good faith as requiring meaningful payments to creditors. However, this Court

has rejected the notion that there is any payment requirement embodied in the term "good faith". See *In Re: Walsey*, 7 B.R. 779 (1980, Bkrtcy.N.D.Ga.) and *In Re: Carter*, 9 B.R. 140 (1981, Bkrtcy.N.D.Ga.). The only sections of Chapter 13 which quantify the payments to be made to creditors are 11 U.S.C. § 1325(a)(4) and (a)(5)(B)(ii). Section 1325(a)(4) provides that the property distributed to unsecured creditors under the plan must have a value as of the effective date of the plan that is not less than the amount that would be paid to those creditors in a Chapter 7 liquidation. When a secured claim is provided for in the plan and the plan has not been accepted by the holder of that claim Section 1325(a)(5)(B)(ii) requires that the property distributed to the secured creditor under the plan must have a value as of the effective date of the plan that is not less than the allowed amount of the secured claim. The debtors' plan meets these standards. As there are no other payment standards under Chapter 13 which the debtors are required to meet the Court concludes that NCB's objection is without merit.

Having carefully reviewed the plan proposed by the debtors, the Court finds that the provisions of 11 U.S.C. § 1325(a) have been complied with. Therefore the Court concludes that the debtors' plan shall be confirmed.

## CONCLUSIONS OF LAW

1. The debtors filed a plan as required by 11 U.S.C. § 1321 and Rule 13–201 of the Rules of Bankruptcy Procedure.

2. The order and notice for the first meeting sent to the creditors in this case sufficiently advised the creditors that their claims were being dealt with in a Chapter 13 plan.

3. The slight deviations from the provisions of Rule 13–204(a)(1) of the Rules of Bankruptcy Procedure were neither meaningful nor prejudicial.

4. The debtors' plan complies with the provisions of 11 U.S.C. § 1322.

5. An assertion that that proposed plan was formulated by the trustee and not the debtors is not a ground for objection to confirmation under 11 U.S.C. § 1325(a).

6. In order to comply with the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii) a debtor must pay interest on allowed secured claims.

7. Although NCB is entitled to retain its security interest, it is not entitled to receive the monthly payments called for by its contract with Mr. Colston.

8. Lack of insurance protection does not provide grounds for objection to confirmation under 11 U.S.C. § 1325(a) though it may provide grounds for relief under 11 U.S.C. § 362.

9. NCB failed to prove that any provision of Chapter 13 of Title 11 of the United States Code is so grossly arbitrary and unreasonable as to be incompatible with fundamental law.

10. For cause shown the Court concludes that a four year plan is appropriate in this case.

11. The amount of the allowed secured claim of NCB is $2,194.40.

12. The amount of the allowed secured claim of Western Auto is $183.24.

13. The amount of the allowed secured claim of Commercial Credit Corporation is $1,200.00.

14. The amount of the allowed secured claim of Finance America is $1,000.00.

15. The claim of Woods Brokerage is unsecured.

16. The good faith standard of 11 U.S.C. § 1325(a)(3) does not set a standard for any minimum dollar amount which must be made to creditors under a Chapter 13 plan.

17. The debtors' plan complies with the provisions of 11 U.S.C. § 1325(a). It is therefore

ORDERED that the debtors' plan shall be and same is hereby confirmed; and it is further

ORDERED that the plan shall be administered in the following manner. The debt-

ors shall make weekly payments to the trustee. From these payments the trustee shall first pay any unpaid claim of the kind specified in 11 U.S.C. § 507(a)(1) and the percentage fee for the standing trustee as required by 11 U.S.C. § 1326(a)(1) and (2). When these claims have been paid in full the trustee shall pay any other claims having priority under 11 U.S.C. § 507. After these priority claims have been paid in full the secured creditors shall be paid pro rata and shall receive interest on their claims at a rate of 10½% per annum. When full payment of these claims have been made the unsecured claims shall be paid pro rata.