**In re Joe Franklin EURY and Shirley Eury, Debtors.**

**Bankruptcy No. 80–00576R.**

United States Bankruptcy Court,
N. D. Georgia,
Rome Division.

May 28, 1981.

---

**2.** See H.R.Rep. 95–595, 95th Cong., 1st Sess., 120 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

R. Everett Anderson, Rome, Ga., for debtors.

Clinton J. Morgan, Jr., Wright, Morgan & Jones, Rome, Ga., for Nat. City Bank of Rome.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

The objections of National City Bank of Rome to the confirmation of the debtors' Chapter 13 plan brought the matters involved herein before the Court. The objections were heard by the Court at the confirmation hearing held December 31, 1980 in Rome, Georgia. Having considered the objections, the arguments of the parties and the pleadings on file, the Court makes the following decision.

## FINDINGS OF FACT

Joe Franklin Eury and Shirley Eury filed a joint petition under Chapter 13 of Title 11 of the United States Code on October 31, 1980. Their proposed plan provides for weekly payments of $56.00 to the trustee from which 100% of all secured and unsecured claims will be paid over a period of five years.

On December 23, 1980 National City Bank of Rome, ("NCB") filed an "Objection to Confirmation". Several objections to confirmation have been asserted each of which will be addressed separately below.

## APPLICABLE LAW

In determining whether to confirm a Chapter 13 plan the Court is governed by 11 U.S.C. § 1325(a) which provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

■ NCB contends that no plan was filed by the debtors as required by 11 U.S.C. § 1321 and Rule 13–201 of the Rules of Bankruptcy Procedure. With this conten-

tion the Court cannot agree. The debtors filed a printed form entitled "Chapter 13 Plan" with their petition. This plan discloses the duration of the plan as well as the amount to be paid to the trustee each week. The secured and unsecured creditors to be paid under the plan have been listed. It cannot be seriously contended that this pleading is not a Chapter 13 plan. Accordingly, the Court finds that a plan has been filed by the debtors as required by Section 1321 and Rule 13–201.

■ NCB asserts that the creditors were given a notice requiring them to accept or reject the plan without being advised as to the nature of the plan. The creditors in this case were sent the form notice entitled "Order for Meeting of Creditors, Combined with Notice Thereof and of Automatic Stay". This notice discloses that a five year plan has been proposed with provides for weekly payments to the trustee of $56.00. The notice further states the total amount of secured indebtedness, the total amount of unsecured indebtedness and the total overall indebtedness of the debtors. Although it might have been more helpful to the creditors if the order and notice had informed them of the debtors' proposal to pay all secured and unsecured claims in full, the failure to disseminate such information was not prejudicial. The order and notice for the first meeting of creditors advised the creditors that their claims were being dealt with in a Chapter 13 plan. Being so advised the creditors were put on notice to come into the Court to protect their interests. As the rights of the creditors were not prejudiced by the failure of the notice for the first meeting to describe every major provision in the plan the Court concludes that NCB's argument is without merit.

NCB alleges that Rule 13–204(a)(1) of the Rules of Bankruptcy Procedure has not been complied with. This rule provides:

"(a) First Meeting.

(1) Date and Place. Promptly after the filing of a plan the court shall call a first meeting of creditors, but if there is an application or motion to dismiss or to convert to bankruptcy under Rule 13–112, or an appeal from or a motion to vacate an order entered under that rule, the court may delay fixing a date for such meeting. A copy or a summary of the last filed plan and a form of proof of claim containing provision for acceptance or rejection of the plan shall accompany the notice of the meeting. The notice shall state that any secured claim not filed before the conclusion of the first meeting of creditors or within such extended time as the court may fix will not be treated as a secured claim for purposes of voting and distribution and that any creditor filing a claim who has not filed a written acceptance or rejection of the plan pursuant to Rule 13–202 prior to the conclusion of the first meeting of creditors shall be deemed to have accepted the plan. The meeting may be held at a regular place for holding court or at any other place within the district more convenient for the parties in interest.

■ NCB has not stated in what respect Rule 13–204(a)(1) has not been complied with. Nevertheless, the Court has examined the notice sent to the creditors and has discovered some departures from the requirements of this rule. The summary of the plan contained in the notice merely informs the creditors that the debtors have proposed a five year plan under which weekly payments of $56.00 will be made to the trustee. No proof of claim containing a provision for the acceptance or rejection of the plan by the secured creditors accompanied the notice of the first meeting of creditors. The notice does not state that any secured claim not filed before the conclusion of the first meeting of creditors or within such extended time as the Court may fix will not be treated as a secured claim for purposes of voting or distribution.[1] There is no statement in the notice

1. The Court notes that as Chapter 13 plans are no longer voted on by the creditors but are either accepted or rejected by the secured cred- itors, the wording of the statement required to be included in the notice of the first meeting

that any secured creditor filing a claim who has not either filed a written acceptance or rejection of the plan pursuant to Rule 13–202 prior to the conclusion of the first meeting of creditors shall be deemed to have accepted the plan. While there are some deviations from the provisions of Rule 13–204(a)(1), the Court finds that they are neither meaningful nor prejudicial. Although no proof of claim accompanied the notice sent to the creditors, the notice states, "In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim, whether or not he is included in the list of creditors filed by the debtor. Claims which are not filed within six months after the above date set for the meeting of creditors will not be allowed, except as otherwise provided by law." This statement gives notice to the creditors that a proof of claim must be filed if they want to receive dividends from the estate. The notice also states, "File claims and acceptance or rejection of plan in duplicate with the clerk of the bankruptcy court . . ." which advises secured creditors of the necessity of filing a written acceptance or rejection of the plan. Because the slight deviations from Rule 13–204(a)(1) were not prejudicial, the Court concludes that NCB's objection is without merit.

NCB maintains that the debtors' plan does not comply with the provisions of 11 U.S.C. § 1322.[2] Subsection (a) of Section 1322, which specifies the provisions which must be included in a plan reads:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

■ The plan filed by the debtors provides for the submission of a portion of the debtors' income to the supervision and control of the trustee and for the payment of claims entitled to priority under Section 507 as required by Section 1322(a)(1) and (2). There are two classes of creditors in the plan, secured creditors and unsecured creditors. Each claim within each of the two classes will receive the same treatment as the plan provides for payment in full of all secured and unsecured claims. After reviewing the plan the Court concludes that the debtors have complied with subsection (a) of Section 1322.

Subsection (b) of Section 1322 enumerates provisions which may be included in a Chapter 13 plan at the option of the debtor. The debtors herein have availed themselves of only one of these options which is found in paragraph (2) of subsection (b). Under this paragraph a debtor may modify the rights of holders of secured claims other than a claim secured only by real property that is the debtor's principal residence. There are no other provisions in the debtors' plan which fall outside the realm of what is permissible under Section 1322(b). Therefore the Court concludes that the provisions of Section 1322(b) have been complied with.

■ It is argued by NCB that the plan filed in this case is actually the trustee's plan and not the debtors'. For this reason NCB contends that the plan may not be confirmed. This assertion is not a basis for objection to confirmation under 11 U.S.C. § 1325(a). Furthermore there is nothing in the record to indicate that the plan filed in this case was prepared by any party other than the debtors with the assistance of their counsel.

should be amended to reflect this change in the law.

**2.** NCB has asserted a separate objection under 11 U.S.C. § 1322(c) which will be addressed below.

■ NCB contends that the Bankruptcy Code deprives secured creditors of due process for the reason that there is no provision for the payment of interest on secured claims. Section 1325(a)(5) provides for three methods by which secured claims may be dealt with under a Chapter 13 plan. The applicable provision in the instant case is part (B) of Section 1325(a)(5). Under this section a plan must provide that the holder of a secured claim retain the lien securing the claim and the value, as of the effective date of the plan, of property to be distributed under the plan on account of the secured claim cannot be less than the allowed amount of such claim. It has been held that the compensation to which a secured creditor is entitled consists of the present value of the property to be distributed that takes into account the discount of money to be received in the future. *In Re: Ziegler*, 6 B.R. 3, 1 C.B.C.2d 874 (1980, Bkrtcy.S.D. Ohio); *In Re: Crockett*, 3 B.R. 365, 1 C.B. C.2d 926 (1980, Bkrtcy.N.D.Ill.); *In Re: Lum*, 1 C.B.C.2d 95 (1979, Bkrtcy.E.D. Tenn.). In each case it was held that interest payments must be made to secured creditors when secured claims are provided for under a Chapter 13 plan pursuant to 11 U.S.C. § 1325(a)(5)(B). This Court has followed the holding of those cases. *In Re: McLeod*, 2 C.B.C.2d 319 (1980, Bkrtcy.N.D. Ga.); *In Re: Weaver*, 2 C.B.C.2d 315 (1980, Bkrtcy.N.D.Ga.). Because this Court interprets 11 U.S.C. § 1325(a)(5)(B) to require interest payments to a secured creditor, it must be concluded that NCB's objection is without merit.

■ NCB next argues that it is entitled to receive the full and timely monthly payments called for by its contracts with the debtors, to retain its security interest, and to be fully protected by insurance if NCB is to be forced into the proposed plan. To determine the merits of this argument the Court must again look to the provisions of 11 U.S.C. § 1325(a)(5)(B). The Court cannot dispute the assertion that NCB is entitled to retain its security interest. That is clearly provided for in § 1325(a)(5)(B)(i). Accordingly the Court rules that NCB shall retain its lien in the collateral securing its claim. NCB is not entitled to receive the monthly payments called for by its contract unless the plan so provides. Under Section 1325(a)(5)(B)(ii) NCB is entitled to receive property having a value as of the effective date of the plan that is not less than the allowed amount of the claim. This requirement has been fulfilled as the plan proposes to pay NCB's claim in full. Although lack of insurance protection may provide grounds for relief under 11 U.S.C. § 362 it is not grounds to object to the confirmation of a plan under 11 U.S.C. § 1325(a). Having considered the argument of NCB the Court determines that this objection does not provide a basis for the denial of confirmation.

■ NCB argues that its inclusion in the proposed plan of the debtors is a denial of due process of law in violation of the Fifth Amendment to the United States Constitution. It cannot be disputed that the provisions of the Bankruptcy Code enacted by Congress ultimately impair the obligation of contracts, but this impairment alone does not constitute a denial of due process. The test of constitutionality in this instance is whether the provisions of the Bankruptcy Code are so grossly arbitrary and unreasonable as to be incompatible with fundamental law. *Campbell v. Alleghany Corporation*, 75 F.2d 947 (4th Cir. 1935) cert. denied 296 U.S. 581 (1935); *Securities and Exchange Commission v. Albert & Maguire Securities Co., Inc.*, 378 F.Supp. 906 (E.D. Pa.1974). No attempt has been made by NCB to prove that any provision of Chapter 13 is so grossly arbitrary and unreasonable as to be incompatible with fundamental law. In this situation the Court must reject the constitutional objection of NCB.

It is contended by NCB that no cause has been shown for the approval of a plan in excess of three years as required by 11 U.S.C. § 1322(c). At the hearing of December 31, 1980 the Court heard the testimony of debtor Joe Franklin Eury with regard to the need for a five year plan. Mr. Franklin is currently employed at K-Mart. His take home pay is approximately $200.00 a week. Mrs. Franklin is employed at Integrated

Products. Her work schedule fluctuates from a three to a five day work week, and her income varies from approximately $60.00 a week to approximately $110.00 a week. The Franklins have a daughter whom they are sending to college. Mr. Franklin estimated their joint monthly income at $1,400.00 and their monthly expenses at $1,100.00. According to Mr. Franklin, the money remaining after payments are made into the Chapter 13 plan will be used to pay utility bills. These bills generally exhaust the balance remaining after the Franklins have paid their living expenses and their Chapter 13 plan payments.

■ After reviewing the testimony of Mr. Franklin and the debtors' bankruptcy schedules the Court determines that a five year plan is acceptable in this case. The debtors desire to pay their debts in full. They have displayed a willingness to pay all that they are able to achieve this goal. Although Mr. Franklin indicated a willingness to increase the amount of the weekly payments to be made into the plan, the Court is convinced that any increase would create an economic hardship for the Franklins. Accordingly, the Court concludes that the debtors may extend their plan to five years.

NCB argues that the debtors' plan should not be confirmed for the reason that other holders of secured claims are to be paid as fully secured creditors even though it has not been established that these creditors are fully secured. A claim of a creditor is secured to the extent of the value of the creditor's interest in the property securing the claim. 11 U.S.C. § 506(a). Valuation of collateral is necessary in order to determine the amount of the allowed secured claim.

Historically the Court has relied heavily on the recommendations of the trustee in ascertaining the amount of allowed secured claims. Recommendations have been presented to the Court by the trustee in the instant case. The trustee's position is that the claims of Ford Motor Credit Corporation, NCB, and CIT Financial Services are fully secured. Ford Motor Credit Corpora-

tions' claim of $4,409.75 is secured by a 1978 Ford Mustang. It was brought to the Court's attention that this vehicle has been damaged and that an insurance claim has been filed by the debtors. The trustee proposes to hold the Chapter 13 payments which are to be disbursed to Ford until the insurance claim has been acted on by the insurance agency. Any funds received by the debtors from the insurance agency will be turned over to Ford Motor Credit Corporation. NCB's claim of $1,407.48 is secured by a second mortgage on the debtors' home. There is a first mortgage on the home which secures a debt in the amount of $4,500.00 owed by the debtors to Dempsey Brothers Insurance Agency. At the hearing of December 31, 1980 Mr. Franklin testified that the value of the house is approximately $17,000.00. The claim of C.I.T. Financial Services totals $2,099.50 and is secured by a 1973 Chevrolet station wagon. In addition to these recommendations, the trustee has recommended that the arrearages owed to Dempsey Brothers Insurance Agency in the amount of $694.56 be treated as a fully secured claim. It has also been recommended that the claim of Sears and Roebuck, in the amount of $1,310.65 which is secured by consumer goods be treated as secured to the extent of $550.84 and unsecured as to remaining balance.

After considering the recommendations of the trustee, the bankruptcy schedules and the transcript of the hearing of December 31, 1980 the Court adopts the trustee's recommendations with regard to the amounts of the secured claims subject to the possible adjustment of the allowed secured claim of Ford Motor Credit Corporation after the insurance claim of the debtors has been acted upon.

As the amounts of the secured claims in the instant case have been considered and ascertained by the Court, the objection of NCB cannot be sustained.

■ The standing trustee has devised his own system of priorities for the payment of secured creditors in the instant case. Dempsey Brothers Insurance Agency and Ford Motor Credit Corporation have

been given a "first priority" status, Sears and Roebuck Company and NCB have been given "second priority" status and C.I.T. Financial Services has been given "third priority" status. Although under the trustee's system of priorities each of these creditors will receive payments each month, the payments to "first priority" creditors will be made before payments to "second priority" creditors, and payments to "second priority" creditors will be made before "third priority" creditors. NCB argues that this system of priorities treats creditors of the same class differently in violation of 11 U.S.C. § 1322(a)(3). The Court agrees with this argument. Giving certain creditors a so-called priority status over other creditors of the same class grants favored treatment to those having priority. Such favored treatment clearly violates the clear mandate of Section 1322(a)(3). Therefore the Court rules that the secured creditors of the same class shall be paid pro rata under the plan.

■ NCB contends that the debtors' plan has not been proposed in good faith for the reason that the income of the debtors warrants payments into the plan greater than the amount proposed. The Court is aware of the many cases which interpret good faith as requiring meaningful payments to creditors. However, this Court has rejected the motion that there is any payment requirement embodied in the term "good faith". See *In Re: Walsey*, 7 B.R. 779, (1980, Bkrtcy.N.D.Ga.) and *In Re: Carter*, 9 B.R. 140 (1981, Bkrtcy.N.D.Ga.). The only sections of Chapter 13 which quantify the payments to be made to creditors are 11 U.S.C. § 1325(a)(4) and (a)(5)(B)(ii). Section 1325(a)(4) provides that the property distributed to unsecured creditors under the plan must have a value as of the effective date of the plan that is not less than the amount that would be paid to those creditors in a Chapter 7 liquidation. When a secured claim is provided for in the plan and the plan has not been accepted by the holder of that claim Section 1325(a)(5)(B)(ii) requires that the property distributed to the secured creditor under the plan must have a value as of the effective date of the plan

that is not less than the allowed amount of his secured claim. The debtors' plan meets these standards. As there are no other payment standards under Chapter 13 which the debtors are required to meet the Court concludes that NCB's objection is without merit.

■ Having carefully reviewed the plan proposed by the debtors, the Court finds that the provisions of 11 U.S.C. § 1325(a) have been complied with. Therefore the Court concludes that the debtors' plan shall be confirmed.

## CONCLUSIONS OF LAW

1. The debtors filed a plan as required by 11 U.S.C. § 1321 and Rule 13–201 of the Rules of Bankruptcy Procedure.

2. The order and notice for the first meeting sent to the creditors in this case sufficiently advised the creditors that their claims were being dealt with in a Chapter 13 plan.

3. The slight deviations from the provisions of Rule 13–204(a)(1) of the Rules of Bankruptcy Procedure were neither meaningful nor prejudicial.

4. The debtors' plan complies with the provisions of 11 U.S.C. § 1322(a) and (b).

5. An assertion that that proposed plan was formulated by the trustee and not the debtors is not a ground for objection to confirmation under 11 U.S.C. § 1325(a).

6. In order to comply with the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii) a debtor must pay interest on allowed secured claims.

7. Although NCB is entitled to retain its security interest, it is not entitled to receive the monthly payments called for by its contract with the debtors.

8. Lack of insurance protection does not provide grounds for objection to confirmation under 11 U.S.C. § 1325(a) though it may provide grounds for relief under 11 U.S.C. § 362.

9. NCB failed to prove that any provision of Chapter 13 of Title 11 of the United

States Code is so grossly arbitrary and unreasonable as to be incompatible with fundamental law.

10. For cause shown the Court concludes that a five year plan is appropriate in this case.

11. The amount of the allowed secured claim of Ford Motor Credit Corporation is $4,409.75.

12. The amount of the allowed secured claim of NCB is $1,407.48.

13. The amount of the allowed secured claim of C.I.T. Financial Services is $2,099.50.

14. The amount of the allowed secured claim of Dempsey Brothers Insurance Agency is $694.56.

15. The amount of the allowed secured claim of Sears and Roebuck Company is $550.84.

16. Secured creditors of the same class shall be paid pro rata under the plan.

17. The good faith standard of 11 U.S.C. § 1325(a)(3) does not qualify the amount of payments which must be made under a Chapter 13 plan.

18. The debtors' plan complies with the provisions of 11 U.S.C. § 1325(a). It is therefore

ORDERED that the debtors' plan shall be and same is hereby confirmed; and it is further

ORDERED that the plan shall be administered in the following manner: The debtors shall make weekly payments of $56.00 to the trustee. From these payments the trustee shall first pay any unpaid claim of the kind specified in 11 U.S.C. § 507(a)(1) and the percentage fee for the standing trustee as required by 11 U.S.C. § 1326(a)(1) and (2). When these claims have been paid in full the trustee shall pay any other claims having priority under 11 U.S.C. § 507. After these priority claims have been paid in full the secured creditors of the same class shall be paid pro rata and shall receive interest on their claims at a rate of 10½% per annum. When full payment of these claims have been made the unsecured claims shall be paid pro rata.