In re Arthur H. LONG, a/k/a Arthur Long, a/k/a Art Long, a/k/a A. Long, a/k/a A. H. Long, d/b/a Self-Employed (Owner-Operator) Trucker, SSN 313–32–3485 and Barbara Jean Long, SSN 503–44–7776, Debtors.

Civ. No. 80–5094.
Bankruptcy No. 580–00093.

United States District Court,
D. South Dakota.

April 28, 1981.

James L. Waggoner, Rapid City, S. D., for appellant Green's Moving and Storage.

Robert A. Warder, Rapid City, S. D., for Longs.

Rick A. Yarnall, Sioux Falls, S. D., Trustee.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

This is an appeal from the United States Bankruptcy Court of the District of South Dakota, Western Division, the Honorable Peder Ecker presiding.

Arthur H. Long and Barbara J. Long submitted a plan in accordance with Chapter 13 of the Bankruptcy Act of 1978, 11 U.S.C. §§ 1301–1330. The plan would result in the Debtors' unsecured creditors being paid approximately two cents on the dollar and the Debtors' secured creditors being paid approximately one hundred cents on the dollar.

The first meeting of creditors was held on September 2, 1980, at 4:25 p. m. During the hearing, Green's Moving and Storage, Inc., of Rapid City, South Dakota, an unsecured creditor, objected to the proposed plan. Green's claimed that the plan did not represent the Debtors' best efforts and that the plan was not made in good faith. The hearing for confirmation of the plan was held before Judge Ecker at 5:15 p. m., or 50 minutes after the first meeting of creditors. The objection of Green's Moving and Storage, Inc., (hereinafter Appellant) was overruled from the bench and the Debtor's plan was confirmed.

The primary question before this Court is whether the bankruptcy judge erred in determining that the Debtors' plan was, "... proposed in good faith...." 11 U.S.C. § 1325(a)(3). Title 11 U.S.C. § 1325 provides for the conformation of a Chapter 13 plan if six requirements are met. The requirement of good faith is at issue on this appeal. It is difficult to determine the existence of good faith because, "A comprehensive definition of good faith is not prac-

tical. Broadly speaking the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the chapter] in the proposal. . . ." *In re Terry,* 630 F.2d 634, n. 3 (8th Cir. 1980). Furthermore, "Good faith is not defined in Chapter 13 or anywhere else in the Bankruptcy Act of 1978." *Id.* "The House of Representatives has stated that the purpose of Chapter 13 is to enable a debtor to repay his debts and develop a better credit rating than if he were to file under Chapter 7, yet also provide the debtor with a fresh start. The creditor also benefits because he receives as much, if not more than if the estate were liquidated under Chapter 7. Chapter 13 offers the Debtor many advantages not available in a liquidation proceeding. The issue becomes what price must the Debtor pay to gain the benefits of Chapter 13."[1] (Footnotes omitted) II Collier Bankruptcy Manual (3rd ed.) 1325-2, 3.

The lack of specific congressional guidance as to what constitutes the "good faith" required for plan confirmation, has resulted in a case by case approach. Upon a review of numerous bankruptcy cases this Court is satisfied that the good faith requirement necessitates an inquiry into all the circumstances of each case. While such an examination increases the workload of the courts there is no excuse for avoiding the task. The various factors to be considered by the court were ably stated by Bankruptcy Judge Glenn J. Goldburn in *In re Schongalla,* 4 B.R. 360, 2 C.B.C.2d 286, 289 (Bkrtcy.1980):

> Inquiry should not be structured by a computerized or standard definition of "best effort", but rather should focus on the reasonableness of the debtor's effort

to deal fairly with his creditors. Factors which may be considered in this reasonable effort test should include: the percentage of proposed payments to unsecured creditors; the period of time payments will be made under the proposed plan; the debtor's employment history and future prospects; the amount of unsecured claims and the nature thereof; whether the debtor has filed for bankruptcy in the past and the type of debts sought to be discharged, i. e. whether the debtor is specifically invoking the privilege of the liberal Chapter 13 discharge provisions. By undertaking this case by case inquiry into good faith and reasonableness of the debtor's proposed plan, the Court can ensure that the increased availability of Chapter 13 relief intended by Congress will not be abused.

Judge Goldburn also noted that,

> . . . [P]lans proposing minimal payments to unsecured creditors in satisfaction of Section 1325(a)(4) must be strictly scrutinized for good faith because of the discharge provisions which Chapter 13 relief affords. As Bankruptcy Judge Katz stated *In re George S. and Paengkaeo Howard* [3 B.R. 75 (Bkrtcy.)], "A review of the legislative history of Chapter 13 leads to the conclusion that the drafters did not intend the liberal provisions of Chapter 13 to be used as a disguised Chapter 7 Liquidation. The drafters intended debtors to deal fairly and justly with their creditors. As a reward for such dealings, debtors were given the 'super' discharge provided for in Section 1328(a) by which all debts, except alimony obligations (Section 523(a)(5) and certain long term debts (Section 1322(b)(5)), are discharged upon successful completion of the plan." 5

---

1. On page 1325–2, 3 of the Collier Bankruptcy Manual, footnote 7 sets out the primary differences between a Chapter 7 liquidation and a Chapter 13 proceeding:

   "The benefits of Chapter 13 as opposed to Chapter 7 include: (1) all debts except long term debts, tax debts, alimony, support and maintenance, and post petition debts are dischargeable (*see* 11 U.S.C. §§ 523(a), 1328(a)); (2) a prior discharge is no bar to Chapter 13 relief; (3) unsecured creditors may not vote on a plan (notwithstanding the requirements of section 1325(a)); (4) the debtor can pay attorney's fees and court fees through the plan without an advance payment; (5) the debtor has the right to pay secured creditors the value of the collateral and retain the property (*see* 11 U.S.C. § 1325(a)(5)); (6) the codebtor is granted protection against creditor pressure (*see* 11 U.S.C. § 1301(a)); and (7) there is no limit to the number of Chapter 13 discharges that a debtor may receive (*see* 11 U.S.C. § 1328)."

Bankr.Ct.Dec. 1375, 1376 (S.D.Cal. Feb. 26, 1980). *In re Schongalla*, 4 B.R. at 363, 2 C.B.C. at 288, 289.

In this case the record discloses that the plan submitted by the Debtor to the Trustee did not provide for any payment to the unsecured creditors. (Transcript of first meeting of creditors, p. 11, 12.) This plan was altered by the Trustee, Mr. Yarnall. Mr. Yarnall suggested a "nominal" dividend of two percent for the unsecured creditors. (Transcript of first meeting of creditors, p. 12.)

The record indicates that the budget used by the Debtors in the preparation of their plan contained a surplus of approximately $500 per month. (Transcript, first meeting of creditors, p. 9.) It also appears that the Trustee relied on the Debtors' budget when making his recommendations to the Bankruptcy Court.

In this case, the Bankruptcy Court should have made a rigorous examination of the Debtors' plan. When, out of an average surplus of $1,000 every two months, the plan only provides for nominal payments to unsecured creditors of $20 the plan, "must be strictly scrutinized for good faith." The Bankruptcy Court's obligation in this case cannot be satisfied by the perfunctory recitation of findings made by the Bankruptcy Court. (Transcript of confirmation hearing, page 12.) The disparity between the budgeted bi-monthly surplus [$1,000] and the bi-monthly dividend [$20] to be paid to unsecured creditors in this case requires more than an assembly line analysis of the requirement of good faith. The Bankruptcy Court, in its apparent haste to adopt the recommendations of the Chapter 13 Trustee, neglected to make any inquiry as to whether the plan was a good faith effort to comply with the spirit of Chapter 13. It appears that in return for the advantages of Chapter 13 protection debtors must, whenever possible, make a significant payment to all creditors. Plans that attempt to make a significant payment to all creditors will satisfy the good faith requirement of 11 U.S.C. § 1325(a)(3).

The Debtors have argued that the good faith requirement is satisfied where the unsecured creditors receive more than they would in a Chapter 7 liquidation. In this case, the Debtors claim that, because the unsecured creditors might receive nothing in a Chapter 7 liquidation, the two percent dividend contained in the plan satisfies the requirement of good faith. This Court is unable to agree with Debtors' argument. 11 U.S.C. § 1325(a) clearly sets out good faith as a requirement separate from the requirement that unsecured creditors received more than they would have in a Chapter 7 Bankruptcy. "The concept of good faith, as well as the other necessary considerations, must be satisfied 'independently of a mechanical calculation of liquidation value'," *In re Linda Beaver, Debtor*, 2 B.R. 337, 340, 1 C.B.C.2d 609, 614 (Bkrtcy. S.D.Calif.1980). *See also, In re Iacononi*, 2 B.R. 256, 1 C.B.C.2d 331 (Bkrtcy.D.Utah 1980). In support of the position that good faith, 11 U.S.C. § 1325(a)(3), must be satisfied separately from any calculation of liquidation value, 11 U.S.C. § 1325(a)(4), Judge Meyers, in *In re Linda Beaver*, has stated:

This conclusion is verified when comparison is made between the provisions contained in the various Chapters of the Code. In Chapters 7 and 11, Congress continues the longstanding practice of declaring certain types of debts to be nondischargeable. Nine specific kinds of debts are listed, including debts for fraud, false pretenses, willful and malicious injury, alimony, child support and student loans. *See* 11 U.S.C. § 523. In Chapter 13, if you make the payments required and complete the plan, virtually all of the above debts will be discharged, except for alimony and child support. *See* 11 U.S.C. § 1328(a). Additionally, Chapter 13 has no time bar as is found in Chapter 7. *See* 11 U.S.C. §§ 727(a)(8), (9) (six year time bar). It would be incredible if Congress, in enacting this comprehensive statutory scheme, had carefully guarded against the discharge of certain classes of debts in two chapters and placed a time bar on the use of Chapter 7, and yet would leave a loophole whereby these restrictions

could be effectively torpedoed by a Chapter 13 plan paying a cent or two on the dollar. Surely these plans would be the equivalent of a straight bankruptcy case and must be confined to handling under Chapter 7. Certainly Congress never intended to allow any such abuse by granting *carte blanche* in the use of Chapter 13. Instead, it was anticipated that use of this Chapter would be restricted to those who proposed legitimate plans and this intention is embodied in the requirement of good faith. *Id.* 2 B.R. at 640, 1 C.B.C. at 614, 615.

The plan, as approved by the Bankruptcy Court, does not seem to even come close to making a good faith attempt to comply with the spirit of Chapter 13. If, on remand, the Bankruptcy Court should determine that the Debtors' plan provides (as it appears to) a substantial bi-monthly surplus, then the Bankruptcy Court should not confirm the plan until a *significant* portion of such surplus has been dedicated as a dividend for unsecured creditors. It appears to this Court that the good faith requirement of § 1325(a) requires no less. Given the facts in the present record, it does not appear that the payment to unsecured creditors of $20 every two months out of an apparent surplus of $1,000 can represent good faith.

Upon reviewing the entire record in this case, this Court is left with a definite and firm conviction that the Court below has committed mistake in confirming the Chapter 13 plan of the Debtors' herein. Therefore, this Court will issue its Order reversing the Bankruptcy Court and this matter will be remanded for further proceedings not inconsistent with this Opinion.

On remand the Bankruptcy Court should make specific findings regarding the reliability of the budget submitted by the Debtors. Such a determination will avoid the inconsistencies that seem to appear in the court's rulings during the last confirmation hearing.[2]

---

2. In the last confirmation hearing the Bankruptcy Court found that the allegation of Green's Moving & Storage, Inc. was speculative. Because the objections raised by Green's were based on the same budget that was apparently adopted by the Trustee, this Court is left to wonder if the Bankruptcy Court also implied that the recommendations of the Trustee were speculative.