**In the Matter of Eugene R. JOLLY and Margaret E. Jolly, Debtors.**

**Bankruptcy No. 80–01833.**

United States Bankruptcy Court,
E. D. Wisconsin.

July 24, 1981.

Eugene A. Bartman, DiRenzo & Bomier, Neenah, Wis., for debtors.

Ron Smith, Robinson, Smith & Zoesch, Appleton, Wis., for George Gelman.

Allen B. Adams, Neenah, Wis., trustee.

## DECISION

HOWARD W. HILGENDORF, Bankruptcy Judge.

On August 1, 1980 debtors filed a petition under Chapter 13 of the Bankruptcy Code. The plan, as amended, provides for payment of $288.00 per month for a period of three years to unsecured creditors whose debts total approximately $53,377.00. After payment of the expenses of administration this will result in a dividend of approximately 18% to unsecured creditors. In addition, the debtors propose to pay 100% to secured creditors outside the plan who hold liens on their homestead, a 1980 Mazda automobile, and some items of furniture. These payments outside the plan will be $677.00 per month making a total of $965.00 per month which debtors propose to pay to creditors.

Objections to the plan were filed by the principal unsecured creditor, George Gelman, who has a claim for $48,975.00 for legal services rendered to the debtor, Eugene R. Jolly. Originally Gelman objected on four separate grounds, but three of the objections were either withdrawn or denied by the court. The objection which was denied as a matter of law was a claim by Gelman that the debtor had obtained legal services by false pretenses, false representations, and actual fraud in violation of § 523(a)(2) of the Bankruptcy Code. This objection was denied because such objections do not bar a discharge of the debt under Chapter 13. There remains the objection that the plan was not proposed in good faith as required by § 1325(a)(3) of the Bankruptcy Code. Testimony was taken on February 11, 1981 and the parties were requested to file briefs.

In addition to the objections filed by the creditor, Gelman, the trustee filed belated objections to the payments on the automobile and to G. E. Credit Corp. outside the plan. The trustee contends that these payments should be made under the plan to give the court better supervision over the payments and to give secured creditors a remedy in the Bankruptcy Court if payments are not made. The trustee relies upon a recent decision by Judge John R. Blinn in the Southern District of Texas in the case of *In re Foster*, 9 B.R. 482, 7 B.C.D. 521, which holds that all payments, secured and unsecured, must be made under the plan.

Upon consideration of the records and files, briefs, the testimony of the debtors, and documentary exhibits, the court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Eugene R. Jolly is 55 years of age and has a PHD in Pharmacology. He has been employed by Kimberly-Clark Corporation for the past four years. His gross income

in 1979 from said employment was $47,-535.00. In 1980 his income increased to $56,640.00 per year. There is good reason to believe that he will receive similar increases in the future.

2. Margaret E. Jolly is a housewife who has no employment outside the home. She has a BA degree.

3. The debtors have three sons ages 16, 18 and 21. The oldest son is in college and the two younger sons are in high school and live at home.

4. In 1980 the debtors received state and federal income tax refunds totaling $13,-101.00 due largely to a deduction which the debtors made for attorney's fees paid to Attorney Gelman for defending Mr. Jolly in a criminal action in the State of Pennsylvania in which he was acquitted.

5. The debtors paid Attorney Gelman the sum of $20,000.00 to apply on his fees in said case. In order to do so the debtors placed a second mortgage on their home. The balance claimed by Gelman is $48,-975.00, although the claim is listed at $42,-000.00 in the debtors' schedules.

6. A portion of said tax refunds was used by the debtors to purchase a certificate of deposit in the sum of $10,000.00 which they now possess and receive interest therefrom.

7. Eugene R. Jolly has a group life insurance policy through his employment with a face value of $150,000.00. In addition he has a private life insurance policy in the amount of $100,000.00 which has a cash value of approximately $2000.00. The debtors pay $185.00 per month to maintain this private life insurance policy in which the cash value increases every year. This amount of $185.00 per month should be considered as income.

8. Eugene R. Jolly is the beneficiary of a private pension plan with Kimberly-Clark Corporation which has a present value of $8400.00. The sum of $283.00 is deducted from his salary as a contribution to this private pension plan and should be considered as income. In addition, the debtor, Eugene R. Jolly, is covered by social securi-ty and the statutory deduction is made from his salary for social security tax.

9. The sum of $35.00 per month is deducted from his salary for an education fund which the debtors maintain for their children. In addition they have listed $150.00 expenses per month for education. These amounts should be considered as income available to creditors.

10. The debtors reside in a house which they value at $70,000.00. There are presently two mortgages on the home for a total indebtedness of approximately $50,-000.00 leaving an equity value of $20,000.00. In order to claim this property exempt, the husband claimed the homestead exempt under the Wisconsin state law (Section 815.20) and the wife applied the federal "wild card" exemption of $7,900.00 to the savings certificate.

11. The debtors have two automobiles, including a 1980 Mazda, which they plan to keep by paying 100% of the amount due on the Mazda outside the plan. The lien on the Mazda is approximately $4,000.00.

12. The debtors have three television sets. The husband claimed one exempt under the state law and the wife claimed two television sets exempt under the federal law.

13. The debtors have other personal property valued at approximately $5,500.00 consisting of freezer, refrigerator, washer, dryer, microwave oven, jewelry and one year's provisions for the family which are not encumbered. These items are claimed exempt under the state and federal statutes.

14. The debtors have income available of at least $100.00 per month from the certificate of deposit in the sum of $10,-000.00.

15. The deductions shown in their budget of $2,053.24 per month for withholding and social security taxes is excessive as shown by the fact that they received a large tax refund in 1980. The prospect of future tax reductions will further reduce the withholding deductions. The court finds that a substantial refund will be available for 1981.

16. A reasonable amount for necessary living expenses, based upon the budget submitted by the debtors and upon their testimony, is the sum of $1,500.00 per month.

17. The payments on the mortgage on the homestead will be $495.00 per month.

18. The deductions for withholding taxes and social security taxes required by law are estimated by the court to be approximately $1,600.00 per month which is slightly more than one-third of their gross income.

19. A recapitulation of the income and expenses for the debtors based upon the above Findings of Fact results in the following income available to the debtors which can be used to fund the plan under Chapter 13.

### Monthly Income

| | | |
|---|---|---|
| Gross Salary per month | $4,720.00 | |
| Monthly interest from Savings Certificate | 100.00 | $4,820.00 |

### Monthly Expenses

| | | |
|---|---|---|
| Social Security & withholding tax | $1,600.00 | |
| Living Expenses | 1,500.00 | |
| House, auto & furniture payments | 677.00 | $3,777.00 |
| Balance Available | | $1,043.00 |

20. Allowing $243.00 per month to the debtors as a cushion for unexpected expenses, private life insurance, or pension plan expenses, the debtors have available for payment to unsecured creditors at least $800.00 per month.

21. The husband, Eugene R. Jolly, has claimed the entire equity of $20,000.00 in the homestead as exempt under Wis.Stats. 815.20. This enabled the wife to claim a $7,900.00 "wild card" exemption under the federal statute, § 522(d)(5) in the Savings Certificate because she did not claim a homestead exemption. Assuming that the home is owned jointly, there is a presumption that the husband has only a $10,000.00 interest in the homestead. *Jezo v. Jezo*, 23 Wis.2d 399, 129 N.W.2d 195. Under Wisconsin law the owner of real estate cannot claim a larger exemption than his ownership interest. *In re Janze*, 76–B–384, 385 (E.D.Wis., 1977). If the wife desires to claim her $10,000.00 homestead interest exempt under Wisconsin law, this would leave the $10,000.00 savings certificate as a free asset in a Chapter 7 liquidation.

### OPINION

The two simple words "good faith" have resulted in at least 49 published opinions attempting to define "good faith." [1] Numerous courts have followed the decision *In re Iacouoni*, 2 B.R. 256, 5 B.C.D. 1270 (D.Utah 1980) which holds that good faith requires "meaningful or substantial" payments. This court chooses to follow this standard. The problem is, what is "meaningful or substantial." Obviously the answer depends upon the facts and circumstances of each case. Therefore, the decisions by courts in other cases are not controlling because no two cases are exactly alike.

The Findings of Fact made by the court may not be complete or accurate in every detail, but in general they present a picture of a family with a gross income of $56,640.00 per year from employment with an old established company, Kimberly-Clark Corp., with every reason to believe that employment will continue and that the debtor's salary will be increased in the future. They own a home valued at $70,000.00 with an equity of at least $20,000.00 and other exempt personal property worth at least $23,000.00. Both of the debtors have college degrees. They are part of the "affluent society" as the term is commonly used. Against this picture of their assets

1. *In re Heard*, 6 B.R. 876, 3 C.B.C.2d 170 (Bkrtcy.W.D.Ky.1980).

they have a mortgage debt of $50,000.00 on their home, a $4,000.00 debt on one automobile, and about $53,377.00 in unsecured debts. The principal unsecured debt is a balance due to Attorney Gelman in the sum of $48,975.00 (the debt is listed at $42,-000.00) for services rendered in defending Eugene R. Jolly on a criminal indictment in the State of Pennsylvania which the creditor contends would not be dischargeable under Chapter 7 if the debtors filed straight bankruptcy. Although the debtors refute the allegations that the debt would be non-dischargeable, a trial would be required to determine the dischargeability issue under Chapter 7. The reason Congress provided for a more liberal discharge under Chapter 13 was that the debtor would be making payments on his debts and not simply discharging them. It was never intended that Chapter 13 should be used as a substitute for a Chapter 7 liquidation and at the same time used to discharge debts which could not be discharged under Chapter 7. *In re Long*, 10 B.R. 880, 7 B.C.D. 736 (Dist. of So.Dak.1981). In the *Long* case, which was appealed to the United States District Court, Judge Andrew W. Bogue in deciding that a plan which offered to pay only 2% to unsecured creditors was not filed in good faith said: " . . . This court is satisfied that the good faith requirement necessitates an inquiry into all the circumstances of the case."

The various factors to be considered by the court were ably stated by Bankruptcy Judge Glenn J. Goldburn in *In re Schongalla*, 4 B.R. 360, 2 C.B.C.2d 286, 289 (Bkrtcy. Md.1980):

[4] Inquiry should not be structured by a computerized or standard definition of "best effort," but rather should focus on the reasonableness of the debtor's effort to deal fairly with his creditors. Factors which may be considered in this reasonable effort test should include: the percentage of proposed payments to unsecured creditors; the period of time payments will be made under the proposed plan; the debtor's employment history and future prospects; the amount of unsecured claims and the nature thereof

whether the debtor has filed for bankruptcy in the past and the type of debts sought to be discharged, i. e., whether the debtor is specifically involving the privilege of the liberal Chapter 13 discharge provisions. By undertaking this case by case inquiry into good faith and the reasonableness of the debtor's proposed plan, the Court can ensure that the increased availability of Chapter 13 relief intended by Congress will not be abused.

Judge Goldburn further stated in the *Schongalla* case that,

. . . The drafters intended debtors to deal fairly and justly with their creditors. As a reward for such dealings, debtors were given the "super" discharge provided for in Section 1328(a) by which all debts, except alimony obligations (Section 523(a)(5) and certain long term debts (Section 1322(b)(5), are discharged upon successful completion of the plan.

■ Considering all of the facts and circumstances of this case a payment of $288.00 per month to unsecured creditors is not a "substantial" payment. To allow the debtors to discharge an unsecured debt of $48,975.00 (the debtors listed the debt at $42,000.00) by payment of 18% when there would be some doubt as to the dischargeability of the debt under a Chapter 7 liquidation reflects an intent to avoid payment of the debt rather than to make a meaningful and substantial payment. For the reasons stated the court finds that the plan does not satisfy the requirements of good faith.

CONCLUSIONS OF LAW

1. The plan to pay 18% to unsecured creditors does not satisfy the requirements of good faith under Section 1325(a)(3) of the Bankruptcy Code.

2. A plan may be confirmed if it is amended in the following respects:

(a) Payments of $495.00 per month may be made outside the plan on the mortgages on the homestead because they constitute long term debts which will require more than three years to complete.

(b) Payments on the Mazda automobile and to General Electric Credit Corporation as secured debts shall be made under the plan so that said debts will be paid in full within a period not to exceed three years.

(c) Payments to unsecured creditors under the plan shall be at least $800.00 per month for a period of three years with a provision that the plan may be modified for good cause shown because of any change in future circumstances.