**In re Tommy Lee HENRY, Debtor.**

**Bankruptcy No. 379–02221.**

United States Bankruptcy Court, M. D. Tennessee.

May 6, 1980.

---

**5.** See California Civil Code §§ 5100 *et seq.*

Morris Levine, Nashville, Tenn., for debtor.

Robert P. Ziegler, Nashville, Tenn., for CIT Financial Services.

## MEMORANDUM AND ORDER

PAUL E. JENNINGS, Bankruptcy Judge.

The issue before the court is whether a Chapter 13 plan which proposes to pay nothing or *de minimus* amounts to unsecured creditors is a plan filed in "good faith" as that term is used in 11 U.S.C. § 1325(a)(3).[1]

Debtor lists only one creditor. That creditor is owed, according to the schedule $804.91. Debtor's plan proposes to pay 10% of the debt at the rate of $25.00 per month. Excluding administrative expenses the plan would pay out in four months. The creditor CIT Financial Services, Inc. objects to confirmation on the ground "the plan as proposed is not in the best interest of either the creditor nor the debtor and is not proposed in good faith."

It is the position of the debtor that 11 U.S.C. § 1325(a)(4) is the only directive as to the amount that *must* be paid under the plan. Accordingly, if no distribution to unsecured creditors would be made under Chapter 7, none is required to unsecured creditors in a Chapter 13. It is not disputed the distribution under Chapter 7 would be zero. Obviously, distribution under the plan would be $80.41, more than in a Chapter 7. Further, it is insisted that "good faith" merely requires the debtor to be straight forward in the filing of the petition, disclose all assets and pay the amount satisfying subparagraph (4). Stated differently, it is argued the "good faith" requirement should be limited to a showing of a need for relief; an ability to perform the plan (subparagraph (6)); an honest intent to effectuate the plan; and no purpose of hindering or delaying creditors.

The Code does not define the term "good faith." The legislative history of the section does not define the perimeters of the term. Legislative history of other sections of the Code using the phrase is not of assistance.

---

1. Section 1325(a) states:
   (a) The court shall confirm a plan if—
   (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder; . . . .

The term "good faith" was in the Bankruptcy Act. Section 146 of the Act (Former 11 U.S.C. § 546) stated:

Without limiting the generality of the meaning of the term "good faith", a petition shall be deemed not to be filed in good faith if—

(1) the petitioning creditors have acquired their claims for the purpose of filing the petition; or

(2) adequate relief would be obtainable by a debtor's petition under the provisions of chapter XI of this title; or

(3) it is unreasonable to expect that a plan of reorganization can be effected; or

(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding.

Courts in applying the section stated: Good faith imports an honest intention on the part of the petitioner to effect a reorganization, together with a need for and possibility of effecting it, and, in determining whether a Chapter X proceeding was filed in good faith the Court is required only to ascertain whether it was reasonable to expect that a plan could be effected; that there was opportunity and need for reorganization; and that the petition was filed with honest intention of effecting it and not for the purpose of hindering and delaying creditors. *In re Julius Roehrs Co.*, 115 F.2d 723, 724 (3rd Cir. 1940), quoted with approval in *In re Business Finance Corp.*, 451 F.2d 829, 834 (3rd Cir.).

In *In re Lela & Co., Inc.*, 551 F.2d 399 (D.C.Cir.1977) the court observed:

The overall test, however, is not sincerity or honorableness; indeed, the District Court here recognized these traits in the petitioners, who were considered nonetheless not to be proceeding in "good faith." Rather, "good faith is a criterion which enables the judge to determine, on the particular facts presented, whether the financial, economic and legal situation of the debtor is one within the contemplation of Chapter X."

It is recognized that the cited cases are of limited assistance in the construction of the instant section since they were decided in accord with the statutory guidelines provided for the consideration of the term. However, relevant to the instant matter is the emphasis by those courts that the term "good faith" means more than sincerity and honorableness, more than items specifically outlined by the statute, and included an evaluation of whether the financial, economic and legal situation is one *within the contemplation of the chapter.*

It is appropriate to examine what are the situations contemplated by Chapter 13, what are the purposes of Chapter 13 and what was Congress seeking to accomplish. Indeed, without express definition or direction in the legislative history there are no other guidelines as to the meaning of "good faith."

Initially we consider those expressions of Congress regarding the defects of Chapter XIII and the proposals for curing the defects. It is found that Congress did not change the philosophy of repayment of debt. Congress carefully and with deliberation sought to liberalize provisions in Chapter 13 to accomplish repayment of debt. It was stated that Chapter XIII discouraged overextended debtors from attempting repayment as it was "overly stringent and formalized." The repayment plan referred to was one "under which *all* creditors are repaid *most, if not all*, of their claims over an extended period." H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6077. The House Report stated:

The hearings before the Subcommittee indicated strongly that most consumer debtors would rather work out a repayment plan than file straight bankruptcy. They opt for straight bankruptcy only because present Chapter XIII simply cannot meet their needs." H.R.Rep. No. 595, *supra*, at 117, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6077.

Congress attempted "to cure these inadequacies." The legislation expanded and

made more flexible Chapter 13. The intent of the legislation is aptly summarized:

> The premises of the bill with respect to consumer bankruptcy are that use of the bankruptcy law should be a last resort; that if it is used, debtors *should attempt repayment* under chapter 13, Adjustment of Debts of an Individual with Regular Income; and finally, whether the debtor uses chapter 7, Liquidation, or chapter 13, Adjustment of Debts of an Individual, bankruptcy relief should be effective, and should provide the debtor with a fresh start. H.R.Rep. No. 95–595 at 118, U.S. Code Cong. & Admin.News 1978, p. 6078. (emphasis added).

■ The purpose and benefits of Chapter 13 were recognized by Congress. The purpose of Chapter 13 is to allow an individual to develop a plan for repayment of debt over an extended period, recognizing that in some cases the plan will provide for full repayment and in others only a percentage. The debtors may retain their property by agreeing to repay creditors. Some protection of credit standing is achieved. The debtors' desire to avoid the stigma of bankruptcy is provided for and the pride of being able to pay their debts is retained. Creditors are benefited as losses will be significantly less than if straight bankruptcy were filed.

Chapter 13 debtors were given significant additional advantages over debtors in either Chapter 7 or 11. Under either of those chapters certain types of debts are nondischargeable. *See* 11 U.S.C. § 523. In Chapter 13, if payments are made and the plan completed, all debts are discharged, except alimony and child support. 11 U.S.C. § 1328(a). Further, there is no time bar to the filing of successive Chapter 13 petitions whereas 11 U.S.C. § 727(a)(8) and (9) create a six year bar for Chapter 7 cases. Finally, under Chapter 13 no unsecured creditor support or agreement is needed for implementation of the plan.

■ This court determines that the requirements for confirmation of the Chapter 13 plan as outlined in § 1325 must be viewed in the light of a philosophy of debt repayment, increased benefits to debtors, greater flexibility to meet more debtors' needs and emphasis on a fresh start for the debtor. Consistent with the required flexibility, 11 U.S.C. § 1325(a) outlines the only mandatory requirements of the plan. As noted, subparagraphs (3) and (4) are critical to the issue before the court.

Subparagraph (4) appears to be straight forward in its requirement. The value to be distributed under the plan must be not less than would be distributed if there were a liquidation under Chapter 7 and a subsequent distribution under that chapter.

Although debtor insists subparagraph (4) is the only monetary limitation, this court concludes that to so narrowly interpret section 1325(a) vitiates the concept of Chapter 13 as expressed in the legislative history. The purpose is to allow a debtor out of future income to pay creditors and to provide an alternative to Chapter 7. There is no distinction between a case under Chapter 7 and one under Chapter 13 if creditors receive nothing.

■ Obviously, the amount of payment is the pivotal and difficult question. This court concludes payments must be balanced against a requirement that the debtor be provided an immediate "fresh start"; this necessarily includes the criterion that payments over the period of the plan not be greater than the debtor is able to pay. This construction appears to be mandated by subparagraph (6)—the plan must be feasible. Thus, this court can find no statutory or legislative history mandating establishment of any fixed percentage requirement for confirmation. Indeed, a low percentage of payment to unsecured creditors may be dictated by the application of the above factors. Such amounts must be *carefully* scrutinized to establish that the case is not a Chapter 7 case with a Chapter 13 label.

■ This court concludes the "good faith" of 11 U.S.C. § 1325 includes a "fundamental fairness in dealing with one's creditors." *In re Beaver*, 2 B.R. 337 (B.C.S.D.Calif.1980). This fundamental fairness is determined within the Congressional con-

cepts of Chapter 13 and the financial circumstances of the debtor. The purposes of the code cannot be distorted and the plan must not "mock those many thousands of 'poor but honest' wage earners and debtors who fairly deal with their creditors under the Act and under the Code." *In re Beaver, supra,* at 341.

In *In re Iacovoni,* 2 B.R. 256, 267, 1 C.B. C.2d 331 (B.C.C.Utah 1980), it was stated:

By necessity, such a good faith effort must be interpreted *equitably and flexibly.* The following factors may be considered in determining whether a good faith effort to make meaningful payment to holders of unsecured claims has been made:

1. The budget of the debtor, i. e. how much the debtor feasibly can pay.

2. The future income and payment prospects of the debtor.

3. The dollar amount of debts outstanding, and the proposed percentage of repayment.

4. The nature of the debts sought to be discharged; specifically, to what extent the debtor is invoking the advantage of the broader Chapter 13 discharge which may carry with it concomitant obligations of repayment effort. (emphasis added). As seems intended by the flexible standard of "good faith," discretion is to be left with the court to insure that all parties are treated fairly. The "good faith" requirement must be applied in light of the intent of Congress to increase both the availability of Chapter 13 relief and the repayment received by creditors. A proposal of meaningful repayment must be made, in light of the debtor's particular circumstances, even, when, as in these cases, all of the debtor's assets are exempt. 2 B.R. at 267–68, 1 CBC 2d at 347.

In summary, this court is convinced Congress intended to establish flexible standards and intended to leave with the court the application of those standards. I am equally convinced, however, that Congress did not intend Chapter 13 to have the same result for creditors as Chapter 7 but with a more beneficial discharge for debtors.[2]

In the instant matter the court finds the plan was not filed in good faith. The debtor is without question able to pay $25.00 per month. There is no suggestion that such payment for a period longer than four months will be detrimental to the debtor. There is no suggestion that further payment interferes with debtor's fresh start. The plan does not propose a meaningful payment to the creditors consistent with the philosophy of the provisions of Chapter 13 of the Code. It is not a fair proposal to the creditor, in light of debtor's particular circumstances.

Confirmation is DENIED. Debtor is allowed ten days to file an amended plan, absent such amendment the case will be dismissed.

It is so ORDERED.

---

**2.** Such a conclusion is consistent with that of the few cases that have been decided under 11 U.S.C. § 1325(a). *See In re Susan M. Keckler,* 3 B.R. 155 (B.C.N.D.Ohio 1980); *In re George Sam Howard,* 3 B.R. 75 (B.C.S.D.Cal.1980); *In* re *Emily Gladys Campbell,* 3 B.R. 57, 5 Bankr.Ct.Dec. 1365 (B.C.S.D.Cal.1980); *In re Beaver, supra; In re Iacovoni, supra; In re Powell,* 2 B.R. 314, 1 CBC 2d 371 (B.C.E.D.Va. 1980).