Keith M. Lundin, Nashville, Tenn., standing trustee Chapter 13.

**In re Billy Ronald MOSS, Ind. & d/b/a Chaff's Restaurant, Debtor.**

**Bankruptcy No. 380–00635.**

United States Bankruptcy Court, M. D. Tennessee.

June 24, 1980.

## ORDER

PAUL E. JENNINGS, Bankruptcy Judge.

This matter is before the court for consideration of confirmation of a plan pursuant to 11 U.S.C. § 1325(a). Previously the matter was before the court for confirmation and the court denied confirmation based on the court's opinion in *In re Henry*, 4 B.R. 220 (B.C. M.D. Tenn. 1980). The original plan provided for 1% payment to unsecured creditors. There was no proof before the court which would justify the confirmation of such a plan under the *Henry* criteria in that it did not appear there was a significant distinction between the Chapter 13

plan and the results of a proceeding under Chapter 7. At the adjourned confirmation hearing an identical plan was presented to the court for confirmation except that a 14% payment was offered to unsecured creditors and the plan was scheduled to run for 60 months rather than 36 months as originally proposed.

The Chapter 13 petition was filed on March 7, 1980. Debtor's income is $800.00 per month. Debtor is not married but is obligated to pay $300 per month to his ex-wife for child support for two sons, age 13 and 14. The wife is not demanding child support, attempting to give the debtor "an opportunity to get the Chapter 13 plan going." Debtor's expenses are listed as follows:

| | |
|---|---|
| Rent | $225.00 |
| Utilities | 30.00 |
| Food | 100.00 |
| Laundry & Cleaning | 40.00 |
| Doctor & Medical Expenses | 20.00 |
| Transportation | 100.00 |
| Car payment | 150.00 |
| TOTAL | $665.00 |

Debtor's modest food budget is justified only because he is employed in the food business.

The plan proposed a $270.00 per month payment to the trustee. Payment of $156.61 was proposed to the C & I Bank in Memphis, Tennessee, on a 1977 Oldsmobile Cutlass, total amount due as indicated on the claim filed by the creditor as $1,252.88. The debtor's financial problems are identifiable as a $6,000.00 sales tax debt to the Department of Revenue State of Tennessee and a $4,000.00 employer's tax debt to the Internal Revenue Service. These debts were incurred by the debtor and his former partner, Terry Stevenson, from a business venture. Debtor explained that at the time of the operation of the business he was under the misapprehension that Stevenson was keeping tax payments current. Additionally, the debtor has listed unsecured claims in the amount of $41,852.27. Clearly, under 11 U.S.C. § 1322(a)(2), the plan must provide for full payment of the priority tax debt. This clearly presents the difficulty of this Chapter 13 plan. The evidence

submitted to the court established that debtor had been garnished by the Internal Revenue Service for payment of that debt.

In In re Henry, supra, the court concluded that 11 U.S.C. § 1325(a)(3) must be construed in light of the general philosophy of Chapter 13 gleaned from the legislative history of the Code. The court concluded that "good faith" includes a fundamental fairness in dealing with the debtor's creditors. That opinion concluded that Congress did not intend Chapter 13 to be a Chapter 7 situation with only a change in the chapter number. To reach such a result would distort the Congressional intent and mock the many debtors who were fairly dealing with their creditors. Having so stated, the court sought to make clear that the term good faith must be interpreted equitably and flexibly. The opinion positively stated that "this court can find no statutory or legislative history mandating establishment of any fixed percentage requirement for confirmation." The opinion simply observed that a plan proposing low percentage payments to unsecured creditors dictated a careful scrutiny of the plan to establish that it was not a Chapter 7 case with a Chapter 13 label.

In reading the statutory provisions of Chapter 13 and the legislative history of the provisions, one is struck by two lines of thought: 1) the emphasis upon repayment of debt and 2) a fresh start for the debtor. We recognize in In re Henry, supra, that obviously fresh start included consideration of the amount of payment which the debtor could make. Subsection 6 of 11 U.S.C. § 1325(a) dictates the plan must be feasible.

The plan now presented to the court is identical with that previously presented to the court except that the plan provides for payments over a period of 5 years rather than over a 3 year period. 11 U.S.C. § 1322(c) states that a plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a period not to exceed 5 years. A dual issue is presented by the instant case. Assuming the good faith requirements of 11 U.S.C. § 1325(a)(3) are not satisfied under

the *Henry* rationale, may they be satisfied by extending payments from 3 years to 5 years and is the "cause" requirement of § 1322(c) satisfied when a debtor is attempting merely to increase percentage payments to unsecured creditors.[1]

■ The court concludes that there is no justifiable relationship between the mandatory requirements of confirmation as outlined in 11 U.S.C. § 1325 and the provisions in 11 U.S.C § 1322 relative to the length of the plan. This court cannot conclude that a plan otherwise non-confirmable under § 1325 can be made confirmable by an extension from 3 to 5 years. The intention of Congress to limit plans to 3 years is clearly stated in § 1322(c). The wisdom of such a requirement will, I believe, be attested to by any bankruptcy court involved with Chapter 13 plans. Surely the strictures of a Chapter 13 plan should not, as a general rule, be in effect longer than 3 years. Congress has so recognized and has so dictated. Congress has provided the standards to be applied in confirming these 3 year plans by outlining six factors in § 1325. Thus, the court concludes the confirmation of the instant plan must be tested by the § 1325 requirements without the additional 2 year extension so as to provide for additional percentage of payment to unsecured creditors.

■ Viewed in the light of evidence presented at the second confirmation hearing it is now the opinion of the court that the plan as originally proposed with payment of 1% to unsecured creditors should be confirmed. It is apparent from an examination of the budget presented that the debtor is paying all available funds to the plan. Clearly, the debtor cannot be required to pay more money than he has into a Chapter 13 plan. Such plan obviously would not be feasible.

The Committee Report aptly summarizes the court's responsibility regarding feasibility and the standards to apply.

In addition to these requirements, the court must find that the debtor will be able to make the payments called for under the plan.

The court will necessarily be required to consider the debtor's ability to meet his primary obligation to support his dependents, because otherwise the plan in unlikely to succeed. Moreover, it may force the debtor or his dependents to become a public charge, to the detriment of the debtor, his dependents, his creditors, and the public. If the debtor is able to meet his obligations, both under the plan and to his dependents, the court confirms the plan. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 124 (1977), U.S. Code Cong. Admin. News 1978, pp. 5963, 6085.

Indeed, in the instant case the plan is only able to make the proposed payments because of the agreement of the debtor's ex-wife to suspend receipt of child support payments. Confirmation of a plan under the facts herein does no violence to the philosophy of Chapter 13 as outlined by Congress in the Committee Report. Further, under the facts of this case, such *de minimus* payments to unsecured creditors does not "mock" those "poor but honest" Chapter 13 debtors who pay a higher percentage.

In the court's decision in *In re Henry, supra,* indicated as case by case basis was required. The court emphasized that the facts must be closely scrutinized to determine that there is a basis for and indeed a need for the Chapter 13 provisions and results and that the plan is not a mere substitution for relief that can be obtained under Chapter 7. The court finds the difference is clearly present in this case. The debtor has priority debts in the approximate amount of $10,000.00. These debts are non-

1. It should be noted we are not herein dealing with a plan where the debtor has "voluntarily" filed a plan which debtor seeks to run for longer than 36 months to deal with secured debt or pay an amount sufficient to satisfy 11 U.S.C. § 1325(a)(4) or even to pay an increased amount to unsecured creditors because of mor-

al consideration by the debtor. The statements herein regarding "cause" are not intended to express an opinion on that issue. The proof before the court in this case makes it absolutely clear the plan was amended to increase its length *solely* to attempt to get the plan confirmed—an "involuntary" plan, if you will.

dischargeable in Chapter 7 and subject to priority treatment in Chapter 13. The holders of the debts are garnishing the debtor's wages. Chapter 13 is the only relief available to the debtor. For the court to hold that this debtor in ineligible for relief under Chapter 13 merely because *de minimus* payments are being made to unsecured creditors not only is contrary to the intent of Congress as expressed in the Chapter 13 legislation but is to hold that this debtor cannot obtain any meaningful relief under the Bankruptcy Code. This court as the interpreter of legislation and not the maker of legislation is not so empowered. Failure to confirm the plan would, in the judgment of the court, deny the debtor the relief to which he is entitled in order that he be rehabilitated as a producing member of the economic society and be allowed the fresh start to which Congress stated he is entitled.

Accordingly, it is the determination of the court that the modified plan as presented by the debtor should not be confirmed as no cause has been presented to the court for the extension of the plan beyond the 3 year period but that such modified plan will be treated by the court as an application for reconsideration of the original plan. Such plan as proposed originally is CONFIRMED.

It is so ORDERED.