In re Kathleen Mary **PIERCE**, Debtor,

and

In re Thomas H. **OWENS**, Jr., Connie D. Owens, Debtors,

and

In re Robert Michael **MAHR**, fdba Oakmasters, Debtor.

Bankruptcy Nos. 2–87–03253, 2–87–03330 and 2–87–03415.

United States Bankruptcy Court, S.D. Ohio, E.D.

Dec. 10, 1987.

---

**2.** Ohio Revised Code § 2329.66(A)(1).

Lee C. Mittman, Columbus, Ohio, for Robert Michael Mahr, Thomas H. Owens, Jr. & Connie D. Owens.

Robert M. Hoskinson, Westerville, Ohio, for Kathleen M. Pierce.

Frank M. Pees, Worthington, Ohio, trustee.

## ORDER GRANTING CONFIRMATION OF CHAPTER 13 PLANS

R. GUY COLE, Jr., Bankruptcy Judge.

### I. PRELIMINARY STATEMENT

These cases are before the Court upon non-evidentiary hearings held on October 13, 1987. The Court has consolidated its opinion in these cases because common issues of law have been raised, to-wit: whether cause exists under 11 U.S.C. § 1322(c) for these debtors' Chapter 13 plans to provide for payments over a period that is longer than three years. The debtors all assert that their desire to pay a higher dividend to their unsecured creditors than would be paid in a three-year plan constitutes cause pursuant to § 1322(c) for extension of their plans.

The Chapter 13 Trustee ("Trustee") has recommended confirmation of each of the three plans under consideration. Although neither the Trustee nor any other party has objected to confirmation, the presence of divergent reported decisions in this judicial district,[1] and alleged differences in interpretation of § 1322(c) by the judges in this division, suggest the importance of a written decision on the issues raised by the parties.

### II. JURISDICTION

The Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. These are core proceedings which the Court may hear and determine. 28 U.S.C. § 157(b)(2)(L). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### III. FACTS

#### A. *In re Pierce (No. 2-87-03253)*

Debtor, Kathleen M. Pierce ("Pierce"), has proposed a 50–month plan which, if confirmed, will pay holders of allowed unsecured claims a dividend of 34 percent. The plan proposes to pay secured and prior-ity claimants in full in 28 months. Pierce submits that her voluntary request to extend her plan to 50 months, for the purpose of paying her unsecured creditors a higher dividend than they would receive in a three-year plan, is sufficient cause under § 1322(c).

Pierce filed a plan exceeding 36 months for two reasons. First, she was concerned that a 36–month plan, which could pay only a six percent dividend to holders of unsecured claims, might violate this Court's interpretation of § 1325(a)(3)—the good faith requirement—because the plan would propose a relatively low dividend when, in fact, Pierce is able to pay a higher dividend over a period longer than three years. Second, Pierce simply wishes, for purely personal reasons, to pay a higher dividend to her unsecured creditors than she could pay in a three-year plan. Yet, her attorney has counseled her that the court's holding in *In re Festa*, 65 B.R. 85 (Bankr.S.D.Ohio 1986) (per Sellers, J.) (hereinafter *"Festa"*) prohibits confirmation of a Chapter 13 plan whose only cause for exceeding three years is the debtor's desire to pay a higher dividend to his or her unsecured creditors. Pierce is requesting confirmation of the plan now before the Court, but has voluntarily offered to reduce her plan to 36 months if the Court finds that cause has not been established under § 1322(c) and if the Court also concludes that such a shortened plan is not, by reason of its relatively low dividend, violative of the Code's good faith requirement.

#### B. *In re Owens (No. 2-87-03330)*

The Chapter 13 plan of the debtors, Thomas and Connie Owens (the "Owenses"), is a 44–month plan, proposing payment of a 25% dividend to holders of allowed unsecured claims. Secured and priority claims will be paid in full in 34 months. The Owenses, like Pierce, are requesting confirmation of a plan exceeding three years in length based upon their desire to pay their unsecured creditors more

---

**1.** *See, Matter of Davis,* 68 B.R. 205 (Bankr.S.D. Ohio 1986) (per Waldron, J.); *In re Festa,* 65 B.R. 85 (Bankr.S.D.Ohio 1986) (per Sellers, J.); *In re Poff,* 7 B.R. 15 (Bankr.S.D.Ohio 1980).

than the six percent dividend which holders of unsecured claims would receive in a 36-month plan. The Owenses, too, are concerned that a proposal to pay a six percent dividend to holders of unsecured claims pursuant to a three-year plan, instead of paying a higher dividend over a longer period, might run afoul of this Court's interpretation of the Code's good faith standard; however, the Owenses' counsel has advised them that their request to extend their plan beyond three years, solely on the basis of their desire to pay a higher dividend, does not qualify as cause under the court's interpretation of § 1322(c) in *Festa.* Thus, the Owenses intend to reduce their plan, via amendment, to 36 months, if the Court finds that the cause required by § 1322(c) has not been established.

### C. *In re Mahr (No. 2-87-03415)*

The Chapter 13 plan proposed by the debtor, Robert M. Mahr ("Mahr"), will last 39 months and pay a dividend of 25% to holders of allowed unsecured claims, except that General Motors Acceptance Corp. and Security Pacific Finance Corp. each will receive a dividend of 100% because individual co-signers are liable on such debts with Mahr. Secured and priority claimants will be paid in full by the 25th month of the plan.

Mahr's decision to extend his plan longer than 36 months, and thereby pay a slightly higher dividend to unsecured creditors, is a voluntary one. His counsel argues that the statutory preference for three-year plans reflects Congress' concern that the inadequate supervision of debtors performing under Chapter XIII wage-earner plans, particularly in the southern region of the country, resulted in many debtors' continuance under court-supervised repayment plans for unreasonably long periods. Congress felt, says counsel, that such extended subjection to court supervision was, in essence, a form of involuntary servitude. Counsel argues that Congress responded to the problem of unreasonably lengthy plans by enacting § 1322(c) as a protection to debtors, thereby requiring the Court to confirm plans lasting longer than three years only upon a specific finding of cause. While acknowledging Congress' unwillingness to define cause, counsel asserts that cause is established when a debtor simply wishes to pay a higher dividend to his unsecured creditors by extending his or her plan longer than three years. Counsel submits that his client's request is unforced and that a three to five-year plan, voluntarily proposed, does not amount to involuntary servitude.

### IV. DISCUSSION

### A. *The Good Faith Requirement of 11 U.S.C. § 1325(a)(3)*

The issue presented by these three Chapter 13 cases requires the Court to determine whether the debtors' voluntary proposals to extend their plans beyond three years, for the purpose of paying holders of unsecured claims a higher dividend than such holders would receive in a three-year plan, constitutes "cause" under § 1322(c). However, because all but one of the debtors has expressed a concern that a three-year, relatively low-dividend plan might run afoul of § 1325(a)(3), it may be of some benefit for the Court to articulate its general interpretation of the Code's good faith requirement as it applies to the proposed length of Chapter 13 plans and the requirement, if any, of a minimum repayment to unsecured creditors as a condition of confirmation.

As an initial matter, the Court notes that "[C]hapter 13 was designed to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income." 5 *Collier on Bankruptcy* ¶ 1322.01[1] at 1322-3 (15th ed. 1986), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977); S.Rep. No. 989, 95th Cong. 2d Sess. 141 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. The Court, after conducting a hearing pursuant to 11 U.S.C. § 1324, must confirm a Chapter 13 plan if it meets all the criteria for confirmation set forth in § 1325(a).

Section 1325(a)(3) requires that the Chapter 13 plan be proposed in good faith and not by any means forbidden by law. Prior

to passage of the Bankruptcy and Federal Judgeship Act of 1984 ("BAFJA"), many courts used the so-called "good faith test" to compel a minimum repayment as a condition of confirmation. *See, e.g., In re Long*, 10 B.R. 880 (Bankr.D.S.D.1981) (holding that the debtor must make a significant payment to creditors); *In re Bellgraph*, 4 B.R. 421 (Bankr.W.D.N.Y.1980) (holding that a court must consider the percentage of repayment in determining good faith).[2] Other courts, using the good faith test as a springboard, formulated a "best efforts test," which judicially engrafted the best efforts test of § 727(a)(9)[3] into the Chapter 13 statutory scheme. *See, e.g., In re Burrell*, 2 B.R. 650 (Bankr.N.D.Cal.1980); *In re Raburn*, 4 B.R. 624 (Bankr.M.D.Ga. 1980) (holding that good faith requires the debtor's best efforts and a 70–percent minimum payment). Use of the Code's good faith standard represented a statutory basis for many courts to require a minimum level of payments in cases where the courts perceived an abuse of the Chapter 13 remedy by debtors.[4]

Congress responded to the courts' disparate application of the good faith standard—as a means of regulating the amount of

---

**2.** Some courts have concluded, and commentators have observed, that the bankruptcy courts which utilized the good faith standard of § 1325(a)(3) to exact a minimum level of payment from debtors disregarded the established, historical meaning of good faith. *See, e.g., In re Cloutier*, 3 B.R. 584 (Bankr.D.Colo.1980); *In re Sadler*, 3 B.R. 536 (Bankr.E.D.Ark.1980); *Matter of Harland*, 3 B.R. 597 (Bankr.D.Neb.1980). *See also*, Cyr, *The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change*, 55 Am. Bankr.L.J. 271, 275–77 (1981); 5 *Collier on Bankruptcy* ¶ 1325.04 at 1325–10 to 1325–17 (15th ed. 1986) ("The established historical meaning of 'good faith,' a term used throughout the Bankruptcy Act, requires merely that the plan conform with the provisions, purposes and spirit of Chapter 13.... There is nothing in the statutory language or the legislative history either of the former Bankruptcy Act or of the Bankruptcy Code, nor is their anything in the case law under the Bankruptcy Act to suggest that 'good faith' was intended to play any role whatever in determining the quantum of payments or dividends to be proposed by the plan.") However, this Court notes that some courts have determined, from their review of the legislative history to the Code, that Congress contemplated that the "Chapter 13 remedy was to be used as a vehicle for payment of meaningful, and perhaps substantial, dividends to creditors." *In re Poff*, 7 B.R. 15, 17 (Bankr.S.D.Ohio 1980). *See also, In re Price*, 20 B.R. 253, 255 (Bankr.W.D.Ky.1981).

**3.** 11 U.S.C. § 727(a)(9) provides as follows:
(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(9) the debtor has been granted a discharge under section 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least—

(A) 100 percent of the allowed unsecured claims in such case; or
(B) (i) 70 percent of such claims; and (ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort; ...

**4.** Prior to enactment of BAFJA, §§ 1325(a)(4) and (a)(6) contained the only statutory guidelines specifically addressing the quantum of payments as a factor in determining the confirmability of a Chapter 13 plan. With the best interests test of § 1325(a)(4) and the feasibility standard of § 1325(a)(6) serving as the only economic criteria for confirmation, bankruptcy judges often were compelled to utilize § 1325(a)(3)'s good faith requirement to curb perceived abuses of Chapter 13 by denying confirmation of plans which proposed a dividend which met the best interests test, yet failed to devote a meaningful portion of the debtor's excess future income to the plan. *See, e.g., In re Long*, 10 B.R. 880 (D.S.D.1981) (reversing bankruptcy court's confirmation of a Chapter 13 plan which provided for a $10 monthly payment to the trustee and a 2% dividend to unsecured creditors, thereby meeting the best interests test, notwithstanding the fact that the future income of the debtors over and above all expenses approximated $500 per month); *In re Estus*, 695 F.2d 311 (8th Cir.1982) (reversing confirmation of a 15–month Chapter 13 plan that provided zero payment to unsecured creditors); *In re Ali*, 33 B.R. 890 (Bankr.D.Kan.1983) (holding that plan proposing to pay zero percent to unsecured creditors over 25 months would be confirmed only if it were extended to 36 months). *See also*, Cyr, *The "Good Faith" Tempest: An Analysis and Proposal for Change*, 55 Am.Bankr.L.J. 271, 279–81 (1981); Corish & Herbert, *The Debtor's Dilemma: Disposable Income as the Cost of Chapter 13 Discharge In Consumer Bankruptcy*, 47 La.L.Rev. 47, 49–50 (1986). Thus, a number of pre-BAFJA courts concluded that the amount of payments could be considered as one among a number of factors to be considered in assessing good faith of a Chapter 13 plan, or whether the debtor was making his "best efforts"—language extrapolated from § 727(a)(9).

payments and the length of Chapter 13 plans—by considering a number of proposals which would have required a good faith effort by a debtor to provide payments to creditors consistent with the debtor's ability, including a so-called "best efforts test." H.R.Doc. No. 1195, 96th Cong., 2d Sess. 24 (1980). Instead, Congress adopted the "ability-to-pay" provisions of § 1325(b),[5] proposed by the National Bankruptcy Conference, which provided that the amount that a debtor could reasonably afford to pay would become both a floor and a ceiling for Chapter 13 plan payments. *Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary*, 97th Cong., 1st Sess. 181–203 (1981–82). It has been commented that:

> Through this ability-to-pay test, Congress hoped to create a concrete standard which would both eliminate the disparity between the judicial districts and be consistent with the basic consumer credit theory of extending credit based on future income.

Silver, *The Disposable Income Test: An Attempt Toward Uniformity*, 4 Bankr. Dev.J. 221, 225 (1987) (footnotes omitted).

Despite some continuing disparity by the courts in the interpretation of the requirements of § 1325(a)(3) and § 1325(b) concerning the percentage of repayment, it has been observed that the *amount* of a debtor's plan payments no longer should be considered as a factor in the Code's good faith test:

> [T]he 1984 amendments to the Code finally resolve the issue of whether any particular amount must be paid to unsecured creditors above that required by the best interests of creditors test. Since Congress has now dealt with the issue quite specifically in the ability-to-pay pro-

visions, there is no longer any reason for the amount of a debtor's payments to be considered as even a part of the good faith standard. Moreover, by dealing specifically in other provisions with the new problems which were perceived to require a redefinition of good faith under the Code, including not only the amount of chapter 13 payments to unsecured creditors but also the issue of repetitive bankruptcies, Congress has made clear its intention that the term good faith should not be expanded beyond the meaning it traditionally has had. Only where there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith.

5 *Collier on Bankruptcy* ¶ 1325.04[3] at 1325–17 (15th ed. 1986).

■ The ability-to-pay standards of § 1325(b), and their accompanying legislative history, demonstrate to this Court that the percentage of repayment in a Chapter 13 plan is not appropriately considered as an element of good faith where the plan meets the statutory requirements of § 1325(b). *See, In re Red*, 60 B.R. 113, 116 (Bankr.E.D.Tenn.1986) (holding that where the ability-to-pay provisions of § 1325(b) are met, the court "need not further inquire into the degree of substantiality of repayment of unsecured debt ... as a factor in assessing the 'good faith' of a Chapter 13 plan under § 1325(a)(3)"); *In re Easley*, 72 B.R. 948, 955 (Bankr.M.D.Tenn. 1987) (holding that the percentage of repayment is not appropriately considered as an element of good faith where the plan meets the statutory mandate of § 1325(b); thus, "[a]n independent economic test is not required as a component of 'good faith'").

Section 1325(b)(1)(B) provides that if the trustee or the holder of an allowed secured

---

**5.** 11 U.S.C. § 1325(b) states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

claim objects to confirmation of a composition plan, the plan may not be confirmed unless the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first plan payment is due will be applied to make payments under the plan. Disposable income is defined as income received by the debtor which is not reasonably necessary for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). While Congress, in passing § 1325(b), intended to eliminate the courts' use of the good faith standard of § 1325(a)(3) in establishing a minimum amount or percentage of payments that must be made to holders of unsecured claims, most of the federal courts of appeal had already rejected the notion that § 1325(a)(3) required a substantial, or minimum percentage, payment to unsecured creditors. *See, e.g., Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983); *In re Hines,* 723 F.2d 333 (3rd Cir.1983); *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983); *Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir.1982); *United States v. Estus (In re Estus),* 695 F.2d 311 (8th Cir.1982); *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982); *Ravenot v. Rimgale (In re Rimgale),* 669 F.2d 426 (7th Cir.1982); *Cf. Barnes v. Whelan (In re Barnes),* 689 F.2d 193, 200 (D.C.Cir.1982) (adhering to "the traditional meaning of 'good faith' as honesty of intention"). *See*

*generally,* 5 *Collier on Bankruptcy* ¶ 1325.08[1] at 1325–43 (15th ed. 1986).

■ Thus, if a debtor's plan, upon objection, proposes to pay all of the debtor's disposable income over three years, then, assuming the other confirmation criteria of § 1325(a) are met, the debtor is entitled to the relief provided by Chapter 13, including the broad discharge contained in Section 1328(a). Nevertheless, good faith, in its traditional sense, is essential to the confirmation of every Chapter 13 plan and remains an important standard in preserving use of the bankruptcy process for its intended purpose. *See, Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982); [6] *Matter of Davis,* 68 B.R. 205, 209 (Bankr.S.D.Ohio 1986) (per Waldron, J.); *In re Waldron,* 785 F.2d 936, 941 (11th Cir.1986). The court's inquiry into good faith, therefore, should be restricted to the traditional concept of "serious debtor misconduct or abuse," *In re Gathright,* 67 B.R. 384, 390 (Bankr.E.D.Pa.1986), and whether the debtor has acted equitably in proposing his Chapter 13 plan. *In re Goeb,* 675 F.2d 1386, 1390 (9th Cir.1982); *In re Greer,* 60 B.R. 547, 554 (Bankr.C.D.Cal. 1986).

B. *The "Cause" Standard of 11 U.S.C. § 1322(c)*

The actual issue before the Court is whether the debtors' desire to make a higher repayment to their unsecured creditors over 50–month, 44–month and 39–month periods, respectively, constitutes cause to

**6.** The Court notes that the Sixth Circuit's decision in *Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982) does recognize a relationship between the substantiality of repayment of unsecured claims and the good faith requirement of § 1325(a)(3). The *Memphis Bank* decision involved a debtor whose pre-plan conduct in obtaining an automobile loan (*i.e.,* "puffing" of her income on the loan application) was characterized as "dishonest" by the court. The Sixth Circuit held that where the debtor's pre-plan conduct in incurring debt is "dishonest" the bankruptcy court should deny confirmation of such debtor's Chapter 13 plan. 692 F.2d at 432. Where the pre-plan conduct of the debtor is merely "questionable," as opposed to dishonest, the Sixth Circuit would require 100% payment of any claim arising from such "ques-

tionable" conduct. *Id.* Clearly, the *Memphis Bank* decision has no application in the cases before the Court, given the fact that no allegations regarding the nature of any of these debtors' pre-plan conduct have been raised. In any event, the Court questions the continued vitality of the percentage repayment good faith analysis contained in *Memphis Bank* in light of the subsequent enactment of the ability-to-pay test of § 1325(b) in 1984. As Judge Lundin has noted, "To require 100% payment of claims that arise from 'questionable' preplan conduct as an element of 'good faith' would render the general provisions of § 1325(a)(3) more stringent than the specific economic test contained in new § 1325(b)." *In re Easley,* 72 B.R. 948, 953–54 (Bankr.M.D.Tenn.1987).

extend their Chapter 13 plans beyond three years. Section 1322(c) governs the duration of plans and provides as follows:

(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

While discerning Congressional intent is often a difficult task, the rationale underlying § 1322(c) is expressed in the following excerpt of the House Judiciary Committee Report:

In certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have [sic] made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), *reprinted at* U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078. Because Chapter XIII plans under the Bankruptcy Act frequently extended seven to ten years, Congress expressly limited the duration of Chapter 13 plans to three years, except upon a finding of cause. Congress did not attempt, however, to answer the following question: Under what circumstances should a bankruptcy court properly conclude that cause exists for a debtor's plan to exceed three years? Instead, the definition of cause is "left to judicial discretion, to be decided on a case by case basis." *In re Poff,* 7 B.R. 15, 17 (Bankr.S.D.Ohio 1980).

Collier has observed that:

The usual reason for extension of plan payments beyond three years is the debtor's inability to cure a default under section 1322(b)(5) or to pay priority or allowed secured claims in a shorter time. Extensions up to the five year maximum should be allowed without difficulty in such circumstances, since without them the debtor may be unable to obtain effective relief under chapter 13.

5 *Collier on Bankruptcy* ¶ 1322.15 at 1322–33 to 1322–34 (15th ed. 1986). Thus, Collier suggests a flexible approach to § 1322(c)'s cause requirement which would permit extension of a plan beyond three years, where such an extension is justified by the circumstances and is necessary for the debtor to obtain effective relief under Chapter 13.

A debtor's desire to preserve a subsequent discharge pursuant to § 727(a)(9) by payment of a 100% dividend to holders of allowed unsecured claims has been found to constitute cause under § 1322(c). *In re Greer,* 60 B.R. at 555; *In re Stein,* 18 B.R. 768 (Bankr.S.D.Ohio 1982); *In re Powell,* 15 B.R. 465 (Bankr.N.D.Ga.1981). Cause has been found also where the debtor proposes a payment of a 70% dividend, in order to preserve a discharge under § 727(a)(9), assuming the plan has been proposed in good faith and represents the debtor's best effort. *In re Festa,* 65 B.R. at 86; *In re Price,* 20 B.R. 253 (Bankr.W.D. Ky.1981); *In re Poff,* 7 B.R. at 17–18. Also, where it will take longer than three years to pay priority or allowed secured claims in full, courts have held that sufficient cause exists to permit extension of the plan beyond 36 months. *See, e.g., In re Powell,* 15 B.R. at 473; *In re Fries,* 68 B.R. 676, 680, 681 (Bankr.E.D.Pa.1986). Cause has been found, too, where the debtor's allowed suspension of plan payments results in an extension of the plan beyond 36 months to allow full payment under the plan. *In re Greer,* 60 B.R. at 555.

In *Festa,* the debtor proposed a 60–month, 36 percent dividend plan. The debtor suggested that his desire to increase the dividend paid to holders of unsecured claims, standing alone, constituted cause under § 1322(c). The Court, after examining § 1322(c) and its legislative history, concluded that the concern of an unreasonably lengthy subjection to court-supervised repayment plans by Chapter 13 debtors resulted in Congress' "clear directive" that plans last only three years. However, the *Festa* court recognized a narrow exception to this rule: upon a showing of compelling reasons for an extension, the plan would be

permitted to last a maximum of five years. *Festa*, 65 B.R. at 85–86. The court in *Festa* observed that the "factual determination of cause was entrusted to the bankruptcy court, on a case by case basis, based upon the factual context of each case and reflecting the courts' experiences in handling Chapter 13 matters." 65 B.R. at 86, citing *In re Poff*, 7 B.R. 15 (Bankr.S.D.Ohio 1980).[7]

■ The *Festa* court found additional support for the limitation of plans to three years, absent compelling cause, in the ability-to-pay provisions of § 1325(b) which include "[n]o mechanism ... for requiring ... [the] commitment [of disposable income] for any period in excess of 36 months." 65 B.R. at 86. However this Court finds nothing in the language or legislative history of § 1325(b) which would suggest that Congress intended to preclude or discourage the debtor from voluntarily repaying creditors more than mandated by § 1325(b) through the proposal of a plan which exceeds three years. The Court agrees with Judge Waldron's observation in *Matter of Davis*, 68 B.R. 205, 213, that:

The "ability to pay" standards of 11 U.S.C. § 1325(b) provide specific standing for the Chapter 13 Trustee and holders of allowed unsecured claims to be certain that a debtor is contributing the amount Congress has required in the payment of a proposed Chapter 13 plan. Section 1325(b) does not limit a debtor from contributing more than the Congressionally mandated amount, nor does it prohibit a debtor from making a contribution for a period longer than three (3) years.

Accordingly, this Court concludes that § 1325(b) does not, and was not intended to, limit a debtor from proposing a plan for a period exceeding three years; to the contrary, § 1325(b), *inter alia*, prevents a party other than the debtor, such as the trust-

ee or an unsecured creditor, from forcing the debtor to extend a plan for a period exceeding three years. Certainly, if the debtor could be required by the trustee, a creditor, or other party-in-interest, to extend his or her plan beyond three years, such a requirement would be a form of involuntary servitude in the eyes of this Court.

The debtor in *Festa* stated that his desire to increase the dividend paid to his unsecured creditors represented his best effort and that, as such, cause to extend his plan for a period of 60 months had been shown. The Court rejected the debtor's offering of cause and held:

Whatever "cause" may be, however, a debtor's desire to increase the dividend paid to his general unsecured creditors, without more, does not rise to the required level of exceeding the prescribed 36 month period. *In re Moss*, 5 B.R. 123 (Bankr.M.D.Tenn.1980); *In re Greer*, 60 B.R. 547, 14 B.C.D. 58 (Bankr.C.D.Cal. 1986). Were a Chapter 13 debtor's desire to increase his dividend to unsecured creditors, however commendable, sufficient to permit an extension of his plan for an additional period up to 24 months, such extensions would become routine and would emasculate the statutory preference for 36 month plans. Therefore, this Court adopts the views set forth by the *Moss* and *Greer* courts and finds that a debtor's desire to provide for a legally insignificant increased dividend for allowed unsecured claims, standing alone, is not "cause" to confirm a plan proposed to last in excess of 36 months.

65 B.R. at 86–87.

■ This Court has examined the *Greer* and *Moss* decisions, cited in *Festa*, as well as other cases construing § 1322(c), and finds nothing which would establish that a

---

7. In *In re Poff*, 7 B.R. 15, 17 (Bankr.S.D.Ohio 1980), the court found that the term "for cause" was included by Congress "to allow and encourage longer plans only where necessary to pay a substantial dividend to creditors." The *Poff* court held, that in order to secure confirmation of a Chapter 13 plan proposing to last more than three years, a debtor must propose at least a 70% dividend to the least favored class of

unsecured creditors. However, several courts and commentators have criticized this minimum repayment requirement as unfounded either in the legislative history or the statute itself. *See, e.g., In re Fries*, 68 B.R. 676, 680 (Bank.E.D. Pa.1986); *In re Goodavage*, 41 B.R. 742, 745 (Bankr.E.D.Va.1984); W.H. Drake, Jr. & J. Morris, *Chapter 13 Practice and Procedure* § 9.04 at 9–8 (1986).

debtor's desire to extend his or her plan beyond three years, in order to increase the dividend to his unsecured creditors, without more, does not constitute cause under § 1322(c). In *Greer*, the debtors proposed a 36–month, one percent plan. The Chapter 13 trustee objected to the plan on the ground that payments should be larger and the plan should be extended beyond 36 months to permit a "significant" payment to unsecured creditors. The court rejected the trustee's request to extend the plan to four or five years, and found that a "more substantial payment" to unsecured creditors did not qualify as cause to extend the plan longer than three years. 60 B.R. at 555. The court concluded that every three-year plan, paying less than a 100% dividend to unsecured creditors, could be extended to provide a more substantial repayment. If such payment were to qualify as cause, the "Trustee could routinely object to all such plans, and the three-year Chapter 13 plan would become the exception, rather than the rule." *Id.* The court denied the trustee's request and stated that a trustee or creditor who contends that a debtor is not proposing a sufficient payment to unsecured creditors should examine the income and expense projections of the debtor to ensure compliance with § 1325(b)'s ability-to-pay provisions. *Id.*

In *Moss*, the debtor proposed a three-year plan, paying a one percent dividend to unsecured creditors, but failed to provide the necessary legal support for his plan at a hearing on confirmation. At the adjourned hearing, the debtor proposed a nearly identical plan, except that the new plan provided for payments over a five-year period and proposed a 14% dividend to unsecured creditors. The court reviewed the revised plan and concluded that "the strictures of a Chapter 13 plan should not, as a general rule, be in effect longer than 3 years." 5 B.R. at 125. The court determined that it could not "conclude that a plan otherwise non-confirmable under § 1325 can be made confirmable by an extension from 3 to 5 years." *Id.* The court in *Moss* did not hold, however, that a debtor's voluntary proposal to extend his plan beyond three years, in order to pay his

creditors a higher dividend, would be insufficient cause under § 1322(c). To the contrary, the court stated:

> It should be noted we are not herein dealing with a plan where the debtor has "voluntarily" filed a plan which debtor seeks to run for longer than 36 months to deal with secured debt or pay an amount sufficient to satisfy 11 U.S.C. 1325(a)(4) *or even to pay an increased amount to unsecured creditors because of moral consideration by the debtor.* The statements herein regarding "cause" are not intended to express an opinion on that issue. The proof before the court in this case makes it absolutely clear the plan was amended to increase its length *solely* to attempt to get the plan confirmed—an "involuntary" plan, if you will.

5 B.R. at 125, n. 1 (emphasis added).

In the cases under consideration, it is the debtors who have voluntarily chosen to extend their plans beyond three years. Certainly, the Court does not believe that, assuming compliance with the confirmation criteria contained in § 1325, debtors should be required by the Court, the trustee or any other party to extend their plans beyond three years as the trustee in *Greer* sought to accomplish. Such a requirement would, in fact, be tantamount to involuntary servitude.

This Court agrees with *Matter of Davis*, which found that the debtors' plan satisfied the cause requirement of § 1322(c) and could be extended beyond 36 months. Although the court denied confirmation of the debtors' plan as a result of wrongful and manipulative prepetition conduct, the court stated:

> This court concludes it is equally consistent with a Congressional intent to recognize the dignity of all parties who file a bankruptcy proceeding to find a debtor's "sincere and honest effort to repay all creditors" *Ashton*, 63 B.R. at 247 and "to pay his debts", *Jones*, 55 B.R. at 465 constitute cause pursuant to 11 U.S.C. § 1322(c) to extend a plan beyond thirty-six (36) months.

68 B.R. at 213. Other courts, too, have concluded that a debtor's sincere and honest desire to make a more substantial payment to his creditors constitutes cause under § 1322(c) for extension of a Chapter 13 plan beyond three years. *See, e.g., In re Fries,* 68 B.R. 676, 680–81 (holding that debtors may extend plan from 49 to 60 months, where dividend to unsecured creditors would be increased from zero percent to 20%); *In re Eury,* 11 B.R. 397, 403 (Bankr.N.D.Ga.1981) (debtors allowed to extend plan to five years in order to pay their debt in full); *In re Colston,* 11 B.R. 251, 256 (Bankr.N.D.Ga.1981) (debtors permitted to extend their plan to four years over objection by creditor in order to pay creditors in full).

Although the Court finds that the plans under consideration can be extended beyond three years, the court in *Festa* raised significant concerns. For example, the court appeared concerned that the cause exception would swallow the three-year rule. In response to that concern, this Court notes that § 1322(c)'s flexible and elastic standard for extending plans beyond three years was intended to be stretched but not broken. The holding in these cases simply allows these three debtors to pay voluntarily a higher, but less-than-70%, dividend to their unsecured creditors. By this decision, the Court does not intend to endorse, or encourage, long-term, low-dividend Chapter 13 plans. To the contrary, the Court anticipates that compliance with the cause standard will increase in difficulty as the proposed plan lengthens and the dividend decreases.

Another concern manifested by the court in *Festa* is the extenuation of five-year plans to six, seven and eight years as a result of the addition of post-petition debts and payment interruptions. While, like the court in *Festa,* this Court expects the norm to be three years, the Trustee and parties-in-interest must monitor the debtors' performance and pursue their rights and remedies under appropriate sections of the Bankruptcy Code in the event of a material default in the plan or the occurrence of an event which might require the plan to extend for an inordinately long period of time.[8]

As for the commonly-expressed concern over long-duration plans becoming a form of involuntary servitude, the Court notes that it is the debtors here who are *voluntarily* requesting an extension of their plans beyond three years. If some other party were requesting an extension of a plan beyond three years, against a debtor's wishes, it would be inappropriate for the Court to permit such an involuntary extension. Further, if a debtor finds that his circumstances have changed and the plan payments are no longer affordable, the debtor will not necessarily be required to persevere under an unduly burdensome plan; a debtor is entitled to seek modification of the duration and dividend of the plan pursuant to § 1329 or request conversion to a case under another chapter of the Code pursuant to § 1307(a). The Court believes that, in this age of four and five-year (and longer) consumer automobile loans and 30–year residential mortgages, it would be unreasonably paternalistic not to allow these debtors to subject themselves voluntarily to a period of court supervision in excess of three years. Clearly, the statute allows for five-year plans; thus, if debtors, for whatever sincere and honest reason, request confirmation of a plan lasting longer than three years to permit paying unsecured creditors a higher dividend, and thereby are able to enhance their post-bankruptcy credit rating or fulfill some moral commitment, this Court will not deny them that opportunity.

Finally, some critics of Chapter 13 plans lasting more than three years have

---

**8.** Section 1307(c)(1) and (c)(6) permit a party-in-interest to request dismissal of a Chapter 13 case due to "unreasonable delay by the debtor that is prejudicial to creditors" or "material default by the debtor with respect to a term of a confirmed plan." In addition, § 1329(a) of the Code permits the trustee or a holder of an allowed unsecured claim to seek modification of a confirmed plan. Relief under any of the foregoing subsections of the Code may be appropriate where the duration of a debtor's Chapter 13 plan is increased significantly beyond the term contemplated at the time of confirmation.

observed that such plans leave little room for post-petition modification and contain delicately-balanced budgets which are difficult to maintain over a five-year period, resulting in much less assurance of ultimate feasibility or successful completion. This Court has no independent data to verify those concerns, but will not, on such nonstatutory bases alone, deny confirmation of three to five-year plans. The Court would anticipate that cause, affirmatively stated by debtors or their counsel, supported by admissible evidence when appropriate or required,[9] will be established where debtors have a sincere and honest desire to pay a higher dividend. Obviously, the Court's determination of cause, on a case-by-case basis, will result in the confirmation of some plans which are longer than three years and pay unsecured claims a dividend of less than 70%. However, it is entirely possible that a long-duration plan, in the 50 to 60–month range, proposing a relatively low dividend, will not be confirmed if it does not represent a sincere and honest effort, rationally based, to effect a greater repayment to unsecured creditors. Thus, the Court does not intend routinely to confirm long-term, low-dividend plans unless there is a showing, rising to the level of cause, that a period beyond three years is required to make a higher payment to unsecured creditors.

In sum, while this Court agrees that Congress expressed a statutory preference for plans limited in duration to three years, and that a three-year plan is the rule and not the exception, Congress clearly envisioned plans lasting five years if cause is shown to exist. This Court finds that the debtors' willingness to pay their creditors a

higher, albeit perhaps legally insignificant dividend, constitutes cause to extend their plans beyond three years. Accordingly, the Court hereby CONFIRMS the three plans under consideration and will enter orders confirming such plans upon submission and satisfactory review by the Court of appropriate confirming orders.

IT IS SO ORDERED.

---

**9.** The Court believes that, in order to effectuate the efficient administration of Chapter 13 cases, if a debtor proposes a plan with a duration exceeding 36 months he should include a provision in his plan regarding cause for extension of the plan's duration. This procedure has been advocated by legal commentators. *See,* W.H. Drake, Jr. & J. Morris, *Chapter 13 Practice and Procedure* § 9.04 at 9–7 (1986). Inclusion of a statement of cause within the Chapter 13 plan affords the Court an opportunity to consider the § 1322(c) requirement in advance of the confirmation hearing and, if the Court is satisfied with the statement of cause set forth in the plan,

place the case on its Consent Docket pursuant to LBR C–3.18.9. The Court notes, however, that the debtor, as plan proponent, bears the burden of proving that the requisite tests for confirmation outlined in § 1325(a) of the Code have been met. *See, In re Hogue,* 78 B.R. 867 (Bankr.S.D. Ohio 1987); *In re Crago,* 4 B.R. 483 (S.D.Ohio 1980). Accordingly, if the Court deems that testimony of the debtor, or other admissible evidence, is necessary to establish cause under § 1322(c), or to satisfy any other confirmation standard under § 1325(a), then the debtor who fails to appear and testify, or present evidence at the confirmation hearing, does so at his peril.